**KOEHRING COMPANY**
**v.**
**The UNITED STATES.**
**No. 34–66.**

United States Court of Claims.
Feb. 20, 1970.

Don S. Harnack, attorney of record, for plaintiff. Lawrence Gerber and McDermott, Will & Emery, Chicago, Ill., of counsel.

Jane C. Bergner, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Phillip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

OPINION

PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57

(a) [since September 1, 1969, Rule 134 (h)]. The commissioner has done so in an opinion and report filed on December 5, 1968. Exceptions to the commissioner's findings and recommended conclusion of law were filed by plaintiff. Defendant requested that the court adopt the commissioner's findings and recommended conclusion of law. The case has been submitted to the court on the briefs of the parties and oral argument of counsel.

 In addition to the matters discussed by the trial commissioner, the court notes that, in the circumstances found here, the taxpayer impermissibly changed the accrual of its state property taxes for income tax purposes without obtaining the consent of the Internal Revenue Service. Treas.Reg. 118, § 39.-41–2(c); Hackensack Water Co. v. United States, 352 F.2d 807, 173 Ct.Cl. 606 (1965).

Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, with minor modifications in the findings, it hereby adopts the same, as hereinafter set forth, and the foregoing paragraph, as the basis for its judgment in this case.* Therefore, plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

WHITE, Commissioner:

This is a tax refund case growing out of income tax deficiencies that were assessed against, and collected from, the plaintiff for its fiscal years 1953 and 1954.

It is my opinion that the plaintiff is not entitled to recover.

The plaintiff is a Wisconsin corporation, and maintains its principal office and place of business in Milwaukee, Wisconsin. It manufactures and markets heavy construction machinery, general construction machinery, industrial equipment, and material handling equipment.

At all times material to this case, the plaintiff kept its books and records, and filed its income tax returns, on the accrual basis of accounting and on the basis of a fiscal year ending November 30.

### The Tax Accrual Issue

One of the principal issues in this case is whether the real estate and personal property taxes which the County and City of Milwaukee, Wisconsin, imposed on the plaintiff for the calendar years 1953 and 1954 constituted proper income tax deductions for the plaintiff's fiscal years 1953 and 1954, as claimed by the plaintiff, or for the plaintiff's fiscal years 1954 and 1955, respectively as determined (in effect) by the Internal Revenue Service.

During each of the calendar years 1953 and 1954, as well as during years prior to 1953 and subsequent to 1954, the plaintiff owned real estate and personal property located in the County and City of Milwaukee, and it was required to pay real estate and personal property taxes to the County and City of Milwaukee on account of the ownership of such property.

The Wisconsin statutes require the assessment (valuation) of a taxpayer's property, both real and personal, to be made on May 1 of each year. The assessed value so determined is subject to protest until the third Monday in July. If written objections to such valuation are not filed with the Tax Commissioner on or before the third Monday in July, the valuation becomes final.

In November of each year, the local taxing body is required to adopt a budget, which it files in the office of the City Comptroller. The City Comptroller thereafter calculates the necessary taxes to be levied, and certifies them to the Tax Commissioner. The Tax Commissioner then determines the tax rate and the liability of each taxpayer, and prepares the tax roll. Following such deter-

---

* The dissenting opinion of COLLINS, *Judge*, follows the opinion of the trial commissioner which has been adopted by the court.

mination and the completion of the tax roll, the Tax Commissioner delivers the tax roll, together with his warrant for collection, to the City Treasurer. The tax roll must be delivered not later than the third Monday in December. Upon receiving the tax roll, the City Treasurer publishes a public notice of its receipt. This notice informs taxpayers of the time and manner for the making of their tax payments.

The payment of the taxes, in accordance with the tax roll and the City Treasurer's notice, is due in January of the ensuing year, except that, at the option of a taxpayer, the taxes may be paid in 10 equal monthly installments during the ensuing year. There is a statutory provision authorizing the payment of taxes before they become due, but such payments in advance are regarded as deposits and are declared to be trust funds, no part of which is available for expenditure by the taxing authority until the taxes become due.

For the calendar year 1952, the tax roll and warrant for collection, showing the real estate and personal property taxes due the County and City of Milwaukee, were received by the City Treasurer on December 22, 1952. All taxpayers owing property taxes to the County and City of Milwaukee were then officially notified of the delivery of the tax roll, and of the time and manner for the making of their tax payments, by the daily publication of a notice to that effect or 7 days in a local newspaper.

It will be noted that the tax notice for the calendar year 1952 was published by the City Treasurer during the plaintiff's fiscal year 1953, which began on December 1, 1952. Accordingly, the plaintiff entered its 1952 local property taxes, in the amount of $241,837.39, on its books of account in the fiscal year 1953. This was in accordance with the plaintiff's prior practice of entering its local property taxes for a particular calendar year on its books of account after the publication by the City Treasurer of a public notice relative to the receipt of the tax roll for such year. The plain-

tiff's Milwaukee County and City real estate and personal property taxes for the calendar year 1952 were paid by the plaintiff in the calendar year 1953, when they were due.

Commencing with the calendar year 1953 and continuing until the present time, the plaintiff has made arrangements with the office of the Milwaukee Tax Commissioner whereby that office, in November of each year, sends a letter to the plaintiff regarding the amount of its Milwaukee County and City real estate and personal property taxes for the then-current calendar year. Pursuant to such arrangements, the plaintiff was notified in writing by the office of the Tax Commissioner on November 27, 1953 that the plaintiff's real estate and personal property taxes for the calendar year 1953 amounted to $221,186.-59. The plaintiff thereupon delivered to the City Treasurer on November 27, 1953 a check in the amount of $221,186.-59. The check was cashed by the City Treasurer, and it cleared the plaintiff's bank account on November 30, 1953. The plaintiff entered its 1953 real estate and personal property taxes on its book of account in November 1953 (i. e., during the plaintiff's fiscal year 1953).

Thus, the plaintiff entered on its books of account during the fiscal year 1953 the Milwaukee County and City real estate and personal property taxes for both the calendar year 1952 and the calendar year 1953.

It should be mentioned at this point that the tax roll and warrant for collection respecting the Milwaukee County and City real estate and personal property taxes owing for the calendar year 1953 were received by the City Treasurer on December 21, 1953 (i. e., during the plaintiff's fiscal year 1954), and that the customary tax notice was published by the City Treasurer thereafter.

In its Federal income tax return for the fiscal year 1953, the plaintiff deducted Milwaukee County and City real estate and personal property taxes totaling $463,023.98. That sum represented local property taxes for the calendar

year 1952 in the amount of $241,837.39 and for the calendar year 1953 in the amount of $221,186.59.

In accordance with the practice that had been instituted in 1953, the office of the Tax Commissioner notified the plaintiff by means of a letter on November 23, 1954 that the total amount of its Milwaukee County and City real estate and personal property taxes for the calendar year 1954 was $264,446.93. The plaintiff thereupon delivered a check in the amount of $264,446.93 to the City Treasurer on November 29, 1954. The check was cashed, and it cleared the plaintiff's bank account on November 30, 1954. The plaintiff entered its 1954 local property taxes on its books of account in November 1954 (i. e., during its fiscal year 1954).

The tax roll and warrant for collection respecting the Milwaukee County and City real estate and personal property taxes owing for the calendar year 1954 were received by the City Treasurer on December 20, 1954 (i. e., during the plaintiff's fiscal year 1955), and the customary tax notice was subsequently published by the City Treasurer.

In its Federal income tax return for the fiscal year 1954, the plaintiff deducted Milwaukee County and City real estate and personal property taxes in the amount of $264,446.93.

After auditing the plaintiff's income tax returns for the fiscal years 1953 and 1954, the Internal Revenue Service disallowed $221,186.59 of the $463,023.98 deduction which the plaintiff had taken in its return for the fiscal year 1953 on account of real estate and personal property taxes, the disallowed $221,186.59 representing local property taxes owing for the calendar year 1953. Also, the Internal Revenue Service partially disallowed the deduction in the amount of $264,446.93 which the plaintiff had taken in its return for the fiscal year 1954 on account of local property taxes, the disallowance representing the

difference between the 1954 taxes in the amount of $264,446.93 claimed by the plaintiff in its return and the 1953 taxes in the amount of $221,186.59, which the IRS regarded as deductible in the plaintiff's fiscal year 1954. Thus, the Internal Revenue Service held, in effect, that the deduction for local property taxes in the plaintiff's return for the fiscal year 1953 should be limited to $241,837.39, representing local property taxes imposed for the calendar year 1952, and that the deduction for local property taxes in the plaintiff's return for the fiscal year 1954 should be limited to $221,186.59, representing local property taxes imposed for the calendar year 1953.[1]

The Internal Revenue Service assessed against the plaintiff deficiencies that were partially based upon the determinations outlined in the preceding paragraph, and such deficiencies were paid by the plaintiff. Thereafter, the plaintiff filed timely claims for refund, which were disallowed by the Internal Revenue Service.

It will be noted that the plaintiff actually paid its local property taxes for the calendar year 1953 during its fiscal year 1953, and that the plaintiff paid its local property taxes for the calendar year 1954 during its fiscal year 1954. However, the plaintiff is an accrual basis taxpayer, and not a cash basis taxpayer.

A taxpayer who accounts on the accrual basis is entitled to deduct— and should deduct—from gross income any liability which really accrues in the taxable year. Dixie Pine Products Co. v. Commissioner of Internal Revenue, 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 270 (1944). In determining whether a particular liability has really accrued, the test is whether all the events have occurred which fix the amount of the tax and determine the liability of the taxpayer to pay it. United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347 (1926). Accordingly,

---

1. This would make the local property taxes imposed for the calendar year 1954 deductible in the plaintiff's fiscal year 1955.

an accrual basis taxpayer cannot properly allocate an expense to a year other than the year in which the obligation to pay has become final and definite in amount. Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 286-287, 64 S.Ct. 596, 88 L.Ed. 725 (1944).

■ Applying to this case the principles stated in the preceding paragraph, it appears that the plaintiff was premature in attempting to deduct its 1953 local property taxes in its income tax return for the fiscal year 1953, because the plaintiff's obligation for 1953 local property taxes had not become final and definite by the close of the plaintiff's fiscal year 1953, which ended on November 30, 1953. The obligations of taxpayers, such as the plaintiff, for the payment of 1953 Milwaukee County and City real estate and personal property taxes were still tentative at the end of November 1953, since an essential step in the fixing of tax liability—the receipt of the 1953 tax roll, together with the warrant for collection, by the City Treasurer from the Tax Commissioner—had not yet taken place at the end of November 1953. This essential step did not occur until December 21, 1953, which was during the plaintiff's fiscal year 1954.

It has previously been mentioned that the plaintiff, pursuant to arrangements made in 1953 with the office of the Tax Commissioner, received from that office on November 27, 1953 a letter informing the plaintiff regarding the amount of its 1953 local property taxes, and the plaintiff delivered to the City Treasurer on the same day a check in the amount indicated by the letter from the Tax Commissioner's office. However, this advance payment of 1953 local property taxes was regarded under Wisconsin law as a deposit that was to be held in trust until the plaintiff's 1953 local property taxes became due.

The same reasoning applies with respect to the plaintiff's obligation for 1954 local property taxes. At the end of the plaintiff's fiscal year 1954 on November 30, 1954, the 1954 tax roll and warrant for collection had not yet been received by the City Treasurer from the Tax Commissioner. That event did not occur until December 20, 1954, a date within the plaintiff's fiscal year 1955. Therefore, the plaintiff's obligation for 1954 local property taxes was still tentative—and was not yet final and definite—at the close of its fiscal year 1954 on November 30 of that year. This conclusion is not affected by the circumstance that the plaintiff received from the Tax Commissioner's office advance information regarding the amount of its 1954 local property taxes and delivered a check to the City Treasurer on November 29, 1954.

It necessarily follows that the Internal Revenue Service was correct in determining that the plaintiff's local property taxes for the calendar year 1953 were not deductible for income tax purposes in the plaintiff's fiscal year that ended on November 30, 1953, and that the plaintiff's 1954 local property taxes were not deductible in the plaintiff's fiscal year that ended on November 30, 1954.

### The Royalty Accrual Issue

The other principal issue in this case is whether certain royalties from a Japanese corporation should have been reported for income tax purposes in the plaintiff's returns for its fiscal years 1953 and 1954, as determined by the Internal Revenue Service, or deferred until a later time, as contended by the plaintiff.

The plaintiff markets its products on an international basis. After studying the Japanese market and deciding to attempt to enter that market by means of an equity participation in a Japanese affiliate, the plaintiff conducted extensive negotiations with a Japanese corporation known as Ishikawajima Heavy Industries, Ltd. ("IHI"). These negotiations culminated in an agreement dated June 26, 1952 between the plaintiff and IHI ("the agreement").

The agreement provided for the formation of another Japanese corporation to be called Ishikawajima-Koehring Company, Ltd. ("Ishiko"). Ishiko was to have a capital of 100 million yen (200,000 shares with a par value of 500 yen each), with IHI subscribing in cash for the 200,000 shares of Ishiko stock and the plaintiff purchasing 50,000 shares of such stock from IHI at a price of $69,444.45, using for this purpose the sum of $69,444.45 which, under the agreement, Ishiko was required to pay the plaintiff as a fee without delay after Ishiko's establishment.

In the agreement, the plaintiff granted to Ishiko an exclusive right and license to manufacture and sell equipment in Japan, and also the exclusive right to sell in certain other specified countries of the Far East the equipment manufactured by Ishiko in Japan. In this connection, the plaintiff agreed to supply to Ishiko, on a continuing and regular basis, catalogues and other sales data, information, drawings, designs, manufacturing and operating manuals, etc., considered necessary by Ishiko in manufacturing and selling the equipment; to communicate promptly to Ishiko any and all new patents, utility models, new designs, and improvements in the equipment, which the plaintiff might deem to be of value to Ishiko in the sale and manufacture of the equipment; and to supply other engineering services and technical assistance to Ishiko upon request.

The agreement provided for the payment of royalties by Ishiko to the plaintiff, as follows:

> The amount of five percent (5%) of F.O.B. factory selling price of complete Equipment, * * * all manufactured in conformity with the technical information, engineering services, designs and drawings provided by KOEHRING * * *. The aforementioned royalty shall be paid every six (6) months in U.S. dollars at the exchange rate prevailing on the date of actual payment together with the detail analysis sheet within sixty (60) days of the settling dates. (two terms per a year)

In accordance with the agreement, Ishiko was incorporated on July 23, 1952. Thereafter, it began the manufacture and sale of equipment under the license granted by the plaintiff.

For the plaintiff's fiscal year that ended on November 30, 1953, royalties in the amount of $25,356.55 became due and payable to the plaintiff under the agreement, on the basis of Ishiko's sales. Of this amount, the sum of $342.55 was paid to the plaintiff by Ishiko on or about July 10, 1953, but the remainder was not paid to the plaintiff until 1956.

For the plaintiff's fiscal year that ended November 30, 1954, royalties in the amount of $44,171.80 became due and payable to the plaintiff under the agreement, on the basis of Ishiko's sales. Payment of such royalties was not made to the plaintiff by Ishiko until 1956.

Except for the sum of $342.55 that was paid in July 1953, the royalties referred to in the two immediately preceding paragraphs were not paid by Ishiko to the plaintiff as they became due under the agreement, because of financial problems that confronted Ishiko at the time. Such problems were the results of inflation in Japan, a severe demand for capital in that country, the difficulty of obtaining credit, and the requirement under Japanese law that Ishiko maintain a relatively high percentage of its funds in the form of compensating balances. Ishiko's financial problems at the time were regarded by Ishiko and the plaintiff as temporary in nature, and it was anticipated by both parties—correctly, as it turned out—that Ishiko would be able within a few years to make the royalty payments for the periods now under consideration.

After extensive discussions, the plaintiff's resident representative in Japan and Ishiko's Director of Finance reached an understanding in December 1954 (which was after the close of the plain-

to receive royalties from Ishiko in the tiff's fiscal year 1954) to the effect that Ishiko might defer until November 30, 1957 the payment of royalties with respect to the periods now under consideration. As previously indicated, such royalties were actually paid in 1956.

Except for the sum of $342.55 that became due and was received in the plaintiff's fiscal year 1953, the plaintiff did not report in its Federal income tax returns for the fiscal years 1953 and 1954 any of the royalties which became due and payable from Ishiko during those fiscal years under the terms of the agreement.

After making an audit of the plaintiff's income tax returns, the Internal Revenue Service determined that there should be included in the taxable income of the plaintiff for its fiscal years 1953 and 1954 the amounts of $25,014 and $44,171.80, respectively, representing royalties that became due and payable from Ishiko to the plaintiff during those fiscal years. Deficiencies for the plaintiff's fiscal years 1953 and 1954 were assessed partially on this basis; the deficiencies were paid by the plaintiff; and timely claims for refund were filed by the plaintiff and disallowed by the Internal Revenue Service.

■ For an accrual basis taxpayer, such as the plaintiff, it is the right to receive an item of income, and not the actual receipt of it, that causes such income to accrue and makes it taxable for income tax purposes. Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 184, 54 S.Ct. 644, 78 L.Ed. 1200 (1934); Clifton Mfg. Co. v. Commissioner of Internal Revenue, 137 F.2d 290, 292, 150 A.L.R. 749 (4th Cir. 1943). Consequently, when the right to receive an item of income becomes fixed, the income accrues for tax purposes. Spring City Foundry Co. v. Commissioner, *supra*, 292 U.S. at pp. 184–185, 54 S.Ct. 644; H. Liebes & Co. v. Commissioner of Internal Revenue, 90 F.2d 932, 938 (9th Cir. 1937).

■ In the present case, the evidence clearly shows that the plaintiff's right amount of $25,356.55 became fixed under the agreement during the plaintiff's fiscal year 1953, and that the plaintiff's right to receive royalties in the amount of $44,171.80, from Ishiko became fixed under the agreement during the plaintiff's fiscal year 1954. Consequently, the amounts indicated should have been reported as income in the plaintiff's tax returns for the fiscal years 1953 and 1954, respectively, even though only $342.55 of the first amount was actually received by the plaintiff during the fiscal year 1953, and none of the second amount was received by the plaintiff in the fiscal year 1954.

The conclusion stated in the preceding paragraph is not affected by the circumstance that Ishiko failed to pay royalties as they became due during the plaintiff's 1953 and 1954 fiscal years because Ishiko was encountering financial problems during that period. In this connection, it must be noted that courts have said that a reasonable doubt as to the collectibility of a debt is a sufficient reason to justify its nonaccrual as income. Clifton Mfg. Co. v. Commissioner, *supra*, 137 F.2d at p. 292; Cuba Railroad Co., 9 T.C. 211, 215 (1947). However, the evidence in this case indicates that there was no real doubt on the part of the plaintiff during its 1953 and 1954 fiscal years about the ultimate receipt of the royalties for 1953 and 1954 from Ishiko. The latter's financial difficulties during the 1953–1954 period were regarded by the plaintiff as temporary in nature, and it was anticipated by the plaintiff that, within a few years, Ishiko would be able to make the royalty payments for 1953 and 1954. This expectation was subsequently realized, and in 1956 the plaintiff received from Ishiko the royalties that had become due and payable during the plaintiff's fiscal years 1953 and 1954.

Since there was a reasonable expectancy on the part of the plaintiff during its 1953 and 1954 fiscal years that the

royalties for those years would be received from Ishiko within a few years, the plaintiff's uncertainty at the time as to just when such royalties would be received did not justify the plaintiff's failure to accrue the royalties as they became due and report them as income on that basis. H. Liebes & Co. v. Commissioner, *supra*, 90 F.2d at p. 939.

Accordingly, the Internal Revenue Service did not commit any error in determining that the plaintiff should have reported in its income tax returns for the fiscal years 1953 and 1954, respectively, all the royalties that became due and payable from Ishiko during those respective fiscal years under the agreement, even though such royalties (except for $342.55) were not actually received by the plaintiff until 1956.

### Conclusion

For the reasons stated in the preceding parts of this opinion, the plaintiff is not entitled to recover, and the petition should be dismissed.

COLLINS, Judge (dissenting):

I respectfully dissent from the court's per curiam adoption of the opinion of Commissioner White for the reason that I feel that plaintiff's tax liability accrued before November 30 for the years 1953 and 1954. Under the "all events" test, which was relied upon by plaintiff in its brief and even referred to by the court in its opinion,[1] the test for an accrual basis taxpayer is whether all the events have occurred which fix the amount of the tax and determine the liability of the taxpayer to pay it.[2] The

court determined that one of the essential steps in the fixing of tax liability was the receipt of the tax roll together with the warrant for collection by the City Treasurer from the Tax Commissioner. And, since this event always occurred around the third week in December, the court ruled that plaintiff's tax liability did not accrue until after the close of its fiscal year on November 30. It is this particular point which forms the basis for the court's decision and with which I cannot agree.

As just stated the two events necessary for a tax liability to accrue are: (1) the amount of the tax must be fixed; and (2) the liability of the taxpayer to pay the tax must be settled. In the State of Wisconsin, the Tax Commissioner is responsible for determining the amount of tax payable by each individual.[3] In plaintiff's particular case, the Tax Commissioner, in 1953 and 1954, computed the amount of tax owed by plaintiff and apprised plaintiff of the amount prior to the end of plaintiff's fiscal year on November 30. Consequently, the first event (fixing the amount of the tax) necessary for the accrual of a tax liability occurred prior to the close of plaintiff's fiscal year.

The question of when plaintiff's liability to pay the taxes in question became fixed can be answered by reference to the Wisconsin statutes. The Wisconsin Code provides that all real and personal property shall be assessed as of the close of the first day of May.[4] This assessment value is then subject to protest until the third Monday in July.[5] If no protest is made then the valuation becomes

---

1. The court's opinion at p. 718.

2. United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 134, 70 L.Ed. 347 (1926). The Court stated in this case: "In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur

which fix the amount of the tax and determine the liability of the taxpayer to pay it."

3. Wis.Stat.Ann. § 70.51 (West 1969).

4. Wis.Stat.Ann. § 70.10 (West 1969).

5. See Commissioner White's Finding of Fact 5(a).

final,[6] and the taxpayer's liability likewise becomes final. In other words, after May 1, unless a protest is made within the allotted time, a taxpayer is absolutely liable to pay real and personal property taxes based on the assessed valuation, and this is so regardless of whether he sells his existing property or buys additional property. Consequently, in the present case, since plaintiff made no timely objection, its liability to pay real and personal property taxes was fixed as of the date of the May 1 assessment.

I do not agree that the delivery of the tax roll is an essential step in the fixing of liability. The delivery of the tax roll is merely the final step in the administrative process of announcing to the taxpayers what their tax liability is. For this reason, for most taxpayers, the time of the delivery of the tax roll is the date on which their tax liability accrues. However, since plaintiff learned of its tax liability and the amount of its tax in late November, this, in effect, amounted to a substitute for the delivery of the tax roll. Therefore, there is no reason for the court to hold otherwise than that, for the years 1953 and 1954, plaintiff's tax liability accrued in late November prior to the end of its fiscal year, and that, accordingly, plaintiff should be allowed deductions during these years for the amount of tax which it paid.[7]

6. Wis.Stat.Ann. § 70.01 (West 1969), which provides in part:
"* * * Real estate taxes shall be deemed to be levied when the tax roll on which they are extended has been delivered to the local treasurer with his warrant for collection. When so levied such taxes shall be a lien upon the property against which they are assessed, superior to all other liens, *effective as of May 1 in the year when levied* * * *."
(Emphasis added.)

7. It should be noted in passing that the fact that plaintiff paid its 1953 and 1954 taxes in November as soon as it received notice of the amount is not really relevant in determining when plaintiff's tax liability accrued. Since plaintiff was an accrual basis taxpayer and not a cash basis taxpayer, the time of payment would not be significant. Thus, the fact that plaintiff's tax payments might have been regarded by the City Treasurer as deposits under § 74.035 of the Wisconsin Code should not have any real bearing on the result reached in this opinion.