## LIFE INSURANCE COMPANY OF GEORGIA

v.

## The UNITED STATES.

### No. 135–73.

United States Court of Claims.

May 20, 1981.

Edward J. Schmuck, Washington, D. C., attorney of record, for plaintiff; Randolph W. Thrower, Atlanta, Ga., Carolyn P. Chiechi, George K. Yin, Sutherland, Asbill & Brennan, Washington, D. C., and John A. Helms, Atlanta, Ga., of counsel.

Michael J. Dennis, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, SKELTON, Senior Judge, and KASHIWA, Judge.

KASHIWA, Judge.

This case is before the court on the par-
ties' cross motions for partial summary
judgment. The controversy at issue is
whether interest due in advance and capi-
talized by an insurance company under the
terms of the policyholder loan agreements
is includible in plaintiff's gross investment
income, I.R.C. § 804(b)(1), in the year of
capitalization. Such advance interest was
not paid in cash. After consideration of the
parties' briefs and after oral argument, we
uphold the determination of the Govern-
ment, grant its motion, and therefore dis-
miss the petition to that extent.

Plaintiff is a stock life insurance compa-
ny organized under the laws of Georgia,
qualifying under section 801(a) as a "life
insurance company." Plaintiff has a calen-
dar year taxable year.

During 1958–1967, the years at issue, a
policyholder possessing a policy with a cash
surrender value was entitled to borrow
money from the plaintiff up to the cash
surrender value. No security other than
the policy itself was required on these loans.

Under the policyholder loan agreements,
annual interest on such loans is due and
payable in advance.[1] Plaintiff did not,
however, have the right to compel a cash
payment in advance from the borrower. In
fact, no cash in advance was received in the
transactions at issue.

Typically, a policyholder would borrow a
specified sum and, according to the amount
of interest agreed upon, plaintiff calculated
the amount of interest to be earned be-
tween the date of the loan and the end of
the current policy year. This amount was
then deducted from the actual cash given to
the borrower.

Two possibilities existed for loans out-
standing at the end of a policy year. The
borrower could either pay in cash the
amount of interest due under the agree-
ment for the next year or, if not paid in
cash, plaintiff would calculate the amount
of interest due for the following year on the
remaining amount of the debt and add that
amount to the loan principal. We are con-
cerned only with the latter possibility.

The interest capitalization procedure is
illustrated by the example given in the affi-
davit of defendant's expert, Charles M.
Beardsley:

For a 100X loan and a 5 percent rate of
interest in advance (the loans bore 5 per-
cent advance discounted interest (*i.
e.*, .04762 percent (.05/1.05 = .04762))):

*Year 1:*

| Policy loan | 100X | |
|---|---|---|
| | Interest income | 4.762X |
| | Cash to policyholder | 95.238X |

*Year 2:*

One year's interest is actually billed in
advance to the policyholder on each suc-
cessive policy anniversary date while the
loan remains outstanding. If the policy-
holder pays the loan interest, the follow-
ing accounting entry is made:

| Cash | 4.762X | |
|---|---|---|
| | Interest income | 4.762X |

If the policyholder does not pay the loan
interest, the insurance company adds the
interest to the loan balance shown on its
books via the following entry:

| Policy loan | 4.762X | |
|---|---|---|
| | Interest income | 4.762X |

At this time, then, the policy loan has
been increased from 100X to 104.762X.
The larger loan continues to earn interest
at the regular rate. *See* note 1, *supra.*
This procedure is then repeated every
year while the loan remains outstanding.

The loan agreements allowed the borrow-
er to repay the loan at any time. When a

---

1. The relevant portion of the policyholders'
agreement relating to the payment of interest is
as follows:

"Interest on loans shall be at the rate of five
per cent per annum [or some similar rate] *pay-
able in advance* at the time of the loan and
thereafter at the beginning of each policy year.
If interest is not paid when *due* it shall be
added to and form a part of the loan *and bear
interest at the same rate.*" [Emphasis sup-
plied.]

loan was repaid prior to the end of the policy year, plaintiff could retain only the interest earned up to the date of repayment. The death of the borrower or other policy termination would also result in a similar adjustment to the interest charged by plaintiff in advance.[2]

On both its National Association of Insurance Commissioners' (NAIC) reports [3] and its federal income tax returns, plaintiff only reported the amount of interest earned for that calendar year. Specifically, plaintiff excluded from its gross investment income (section 804(b)(1)) that portion of the advance interest relating to the period beyond December 31 of the relevant year. It is this reporting posture which formed the basis of the Government's assessment of plaintiff.[4]

Generally speaking, section 818(a) requires plaintiff to use the accrual method of accounting.[5] Under the accrual method, "income is to be included for the taxable year when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy." Treas.Reg. § 1.446–1(c)(1)(ii) (the all events test).

The parties disagree on when the plaintiff was sufficiently possessed with the right to receive the interest it should be charged with its accrual. The Government emphasizes that by the terms of the loan agreements, the interest was due and payable in advance. Plaintiff, on the other hand, would have us hold that this interest should not be accrued until it is "earned" (i. e., the loan is used by the borrower for the full year). Plaintiff specifically argues it could not require prepayment of the interest. Thus, according to plaintiff, since there was no enforceable right to prepayment and since it would have to "return" the "unearned" interest, the accrual of the interest must occur only as it is earned. We think plaintiff's rights were sufficiently fixed to be chargeable to the year in which the interest was due and payable.

**2.** The calendar year ratios of "debits of unearned interest returned to policyholders" to "credits of capitalized interest" ranged from a minimum of 5.54 percent to a maximum of 11.73 percent. The overall ratio for the 10-year period was 8.20 percent. This ratio is less than that present in *Union Mutual Life Ins. Co. v. United States*, 420 F.Supp. 1181, 1191 n.12 (S.D.Me.1976) (13.3 percent).

**3.** The NAIC is a national organization of state regulatory officials which regulates insurance companies on behalf of the state insurance departments. The NAIC performs audits and, in this regard, many insurance companies use the NAIC accounting form, known as the "Annual Statement," for purposes of financial reporting. *See generally Commissioner v. Standard Life & Accident Ins. Co.*, 433 U.S. 148, 150, 97 S.Ct. 2523, 2525, 53 L.Ed.2d 653 (1977).

**4.** Plaintiff also asserts that the Government erroneously computed the transitional adjustment under section 818(e) by increasing plaintiff's 1957 income by the total amount of its "unpaid and unearned" interest as of the end of 1957. This objection is also rejected by the court.

**5.** Section 818(a) provides:
"(a) Method of Accounting.—All computations entering into the determination of the taxes imposed by this part shall be made—
"(1) under an accrual method of accounting, or

"(2) to the extent permitted under regulations prescribed by the Secretary, under a combination of an accrual method of accounting with any other method permitted by this chapter (other than the cash receipts and disbursements method).
Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners."
The accounting procedures established by the NAIC apply if they are not inconsistent with the rules of accrual accounting. Therefore, where a contrary result is dictated by accrual accounting the NAIC procedures must give way. The parties dispute whether NAIC procedures were followed. We do not have to resolve this issue, however, because our holding, *infra*, is based on the requirements of accrual accounting and as seen above, any contrary procedures established by the NAIC and here relied on by the plaintiff must fall to our determination of the accrual method. *See Commissioner v. Standard Life & Accident Ins. Co.*, *supra* n.3, at 158–159, 97 S.Ct. at 2529–2530; H.R.Rep.No. 34, 86th Cong., 1st Sess. 42, *reprinted in* 1959–2 C.B. 736, 766; S.Rep.No. 291, 86th Cong., 1st Sess. 72–73, *reprinted in* 1959–2 C.B. 770–823, U.S.Code Cong. & Admin.News 1959, p. 1575.

It is important to bear in mind that in accrual accounting we are concerned with the right to receive the item, not its actual receipt. In *Spring City Foundry Co. v. United States*, 292 U.S. 182, 184, 54 S.Ct. 644, 645, 78 L.Ed. 1200 (1934), the Supreme Court stated:

> Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues.

See *Koehring Co. v. United States*, 190 Ct.Cl. 898, 910, 421 F.2d 715, 721 (1970); *Clifton Mfg. Co. v. Commissioner*, 137 F.2d 290, 292 (4th Cir. 1943).

In our analysis of the loans at issue, we are impressed by the contractual requirement that the interest is due and payable in advance. As a result of such contractual provisions, not only is the interest required to be calculated in advance, it is *due* in advance. In examining a prepaid service situation, for example, the Supreme Court noted that accruing an item is a function of the right of the taxpayer to receive such item and that the particular payments should be accrued "at least at the time they * * * [become] due and payable." *Schlude v. Commissioner*, 372 U.S. 128, 137, 83 S.Ct. 601, 606, 9 L.Ed.2d 633 (1963).

We are assisted in our determination by the previous decisions of other courts requiring life insurance companies with similar loan agreements to accrue the capitalized interest at the time it was due and payable.[6] *Union Mutual Life Ins. Co. v. United States*, 570 F.2d 382 (1st Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Southwestern Life Ins. Co. v. United States*, 560 F.2d 627 (5th Cir. 1977), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); *Jefferson Standard Life Ins. Co. v. United States*, 408 F.2d 842, 856–857 (4th Cir.), *cert. denied*, 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969); *Franklin Life Ins. Co. v. United States*, 399 F.2d 757, 762–763 (7th Cir. 1968), *cert. denied*, 393 U.S. 1118, 89 S.Ct. 989, 22 L.Ed.2d 122 (1969); *Northern Life Ins. Co. v. United States*, 47 A.F.T.R.2d 81–452 (W.D.Wash. 1980). *Contra, Bankers Union Life Ins. Co. v. Commissioner*, 62 T.C. 661 (1974).

Two of the circuit court decisions, *Franklin Life* and *Jefferson Standard*, were considered by the Tax Court in *Bankers Union Life Ins. Co. v. Commissioner, supra* 62 T.C. at 681–682. The Tax Court found those cases not controlling on a similar issue which was before it. *Id.* at 681. The Tax Court felt the circuit courts had relied solely on the fact of actual payment of cash in advance in reaching their conclusions.[7] In the case before it, the Tax Court held that because of the borrower's right of prepayment of the loan the interest should not be accrued until it is "earned," *id.* at 680, *quoting, Guarantee Title and Trust Co. v. Commissioner*, 313 F.2d 225, 227 (6th Cir. 1963). The Tax Court also relied on two of its own cases, namely, *Gunderson Brothers Engineering Corp. v. Commissioner*, 42 T.C. 419 (1964), and *Luhring Motor Co. v. Commissioner*, 42 T.C. 732 (1964). These cases involving finance charge situations held that the interest was accruable as earned with the passage of time.

The plaintiff urges us to adopt the reasoning of the Tax Court, reject the other contrary decisions, and find that the right to receive the interest was not fixed until "earned" by the passage of time.

The First Circuit considered the Tax Court's analysis in *Bankers Union* and "decline[d] to follow its reasoning." *Union Mutual*, 570 F.2d at 386 & n.2. Similarly, the District Court for the Western District of Washington has considered the analysis

---

**6.** These cases involved issues of both cash prepayment of interest and capitalized interest. Only the latter issue is before us.

**7.** It is clear that those courts did intend their holdings to encompass both the cash prepayment issue and the capitalized interest issue. *Union Mutual*, 570 F.2d at 384; *Southwestern Life, supra* 560 F.2d at 641–642; *Jefferson Standard, supra* 408 F.2d at 857; and *Franklin Life, supra* 399 F.2d at 763.

in *Bankers Union* and it likewise was not persuaded. *Northern Life, supra* 47 A.F.T. R.2d at 81–454.

We find it unclear from the opinion of the Tax Court whether it was analyzing a loan agreement which contractually required the interest to be due and payable in advance. If those policy loan agreements did not contain such a requirement, then the case is distinguishable from the instant case on that basis. If, however, the loan agreements did possess this requirement, then we too refuse to concur in the reasoning of *Bankers Union.*

To the extent the decision of *Bankers Union* was based on the possibility of prepayment of the loans (which terminates the earning of interest on the principal), we believe *Brown v. Helvering,* 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934), stands for a contrary holding. *Brown v. Helvering* dealt with overriding insurance commissions; the Supreme Court stated:

> The overriding commissions were gross income of the year in which they were receivable. As to each such commission there arose the obligation—a contingent liability—to return a proportionate part in case of cancellation. But the mere fact that some portion of it might have to be refunded in some future year in the event of cancellation or reinsurance did not affect its quality as income. [*Id.* at 199, 54 S.Ct. at 359.]

*See Union Mutual,* 570 F.2d at 385 & 386 n.2.

We feel the possibility that the plaintiff will not "earn" the capitalized interest is too speculative to prevent accrual of the interest. Plaintiff had no responsibility to supply any additional capital or goods or to perform any services to retain the right to the capitalized interest. A failure to "earn" the capitalized interest was dependent solely on the subsequent actions of the borrower.[8] As such, because plaintiff had a reasonable expectation that the loans would be used for the full year the contingency is insufficient for us to hold the capitalized

interest was not fixed at the time it was due under the loan agreements. *Koehring Co. v. United States,* 190 Ct.Cl. at 910, 421 F.2d at 721–722; *Union Mutual,* 570 F.2d at 385.

The Tax Court in *Bankers Union* also likened the petitioner's arrangement to a mere reallocation of funds which petitioner already had on its books. 62 T.C. at 681. Again, a possible difference between the instant loan agreements and those before the Tax Court is possible; and, again, a different result seems justifiable. In the loan agreements before us, the capitalized interest itself earns interest as it is added to the principal of the loan. *See* note 1, *supra.* Thus, we do not view the effect of the capitalized interest as merely a temporary shifting of accounts wrought at the stroke of a pen. The interest earned on the capitalized interest is economically significant. Such an adjustment creates a benefit to plaintiff economically synonymous with an influx of cash.

As can be seen from the above discussion of the policy loan transactions, a loan of this type is distinctive for its uniqueness. From the perspective of the practical economic effect, it is very much as if the insurance company actually receives cash in advance. Obviously, dealing with the discount situation occurring at the initial stage of the loan transaction, it matters little whether the borrower receives, *e. g.*, $100X and then immediately gives the insurance company $4.76X or whether the insurance company gives the borrower only $95.24X for a loan of $100X. Likewise, in the second year, if the insurance company adds $4.76X to the principal of the loan, with this new, larger amount also earning interest, from a practical standpoint there is little difference from the actual receipt of cash. A major reason why this is so, and also why this situation is peculiar to the policyholder loan area, is that the repayment of the loan and interest is guaranteed by the existence of the policy cash surrender value in the hands of the lender. If the loan ever be-

---

**8.** We note this happened infrequently. *See* note 2, *supra. Cf. Franklin Life, supra* 399 F.2d at 763 (lack of showing of any significant amounts of refunds).

comes as large as the policy cash surrender value, the policy is automatically surrendered. In effect, the cash surrender value of the policy is reduced by the relevant amount each year. This type of lender is thus absolutely guaranteed repayment of the loan because of the policy cash surrender value of the borrower's policy which it retains. Thus, there is no need for a clause allowing the lender to compel payment since there is no doubt about collection.

Accordingly, while the cases cited by the Government admittedly did not tarry on the specific issue of capitalized interest, we feel by virtue of the similarities between interest payable in cash and capitalized interest that those courts perhaps felt a more extended discussion was unnecessary, for economically the two events are nearly equivalent.[9] In this regard, we note that the First Circuit also regards these life insurance policyholder loan agreements as being distinguishable from an ordinary discount loan. *Union Mutual*, 570 F.2d at 386. *See also Morgan Guaranty Trust Co. v. United States*, 218 Ct.Cl. 57, 72, 585 F.2d 988, 997 (1978).

The Government relies on a trilogy of cases of the Supreme Court allegedly supporting its current position of nondeferral: *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); *American Automobile Ass'n v. United States*, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109 (1961); and *Schlude v. Commissioner, supra.* The Court held in each of these cases that the taxpayers' method of accounting was improper because it did not clearly reflect income.

While the Government has at times argued that this trilogy of cases is an absolute bar to the deferral of income unless a specific statutory provision or regulation au-

thorizes deferral, this court and others have not accepted such a thesis. *See Boise Cascade Corp. v. United States*, 208 Ct.Cl. 619, 530 F.2d 1367, *cert. denied*, 429 U.S. 867, 97 S.Ct. 176, 50 L.Ed.2d 147 (1976); *Morgan Guaranty Trust Co. v. United States, supra. Accord, Artnell Co. v. Commissioner*, 400 F.2d 981 (7th Cir. 1968). *But compare Hagen Advertising Displays, Inc. v. Commissioner*, 407 F.2d 1105 (6th Cir. 1969).

Plaintiff, in fact, relies on the *Boise Cascade* and *Morgan Guaranty* opinions as support for its position here. We believe both cases are distinguishable from plaintiff's, however. Indeed, *Morgan Guaranty* itself distinguished the facts before it and those of the insurance company policyholder loan cases. *Morgan Guaranty* found the fact that the insurance company loan agreements required interest be payable in advance was a "critical difference" between the voluntary prepayment of interest situation present in *Morgan Guaranty*. 218 Ct.Cl. at 72, 585 F.2d at 997.

The facts of *Morgan Guaranty* involved voluntary prepayments of interest on bank loans which amounted to .0013 of the interest income received for that year. The court found the Commissioner's attempt to require the inclusion of these payments in the year of receipt rather than deferral to the year of the specified payment date created a distortion of income amounting to an abuse of discretion under section 446(b). In reaching this result, the court considered the *de minimis* nature of the voluntary prepayments, the consistent reporting posture adopted by plaintiff, plus the fact that the Federal Reserve Board required the taxpayer to use an accrual method.[10] Thus, in its review of those facts, the court held the Commissioner's method forced the taxpayer

---

**9.** We do not feel the cases relied on by the Government are dependent on the "claim of right" doctrine, as enunciated in *North Am. Oil Consol. v. Burnet*, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197 (1932), for their holdings; and we make no determination as to the propriety of the use of that doctrine in such a case. We do not, however, rely on that doctrine here.

**10.** But on this latter element, *compare Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 538–544, 99 S.Ct. 773, 784–787, 58 L.Ed.2d 785 (1979) (no presumption that an inventory practice conformable to "generally accepted accounting principles" is valid for income tax purposes); and *Transwestern Pipeline Co. v. United States*, 225 Ct.Cl. ——, ——, 639 F.2d 679, 688 (1980) (Kashiwa, J., concurring).

to use a hybrid method of accounting (part cash method, part accrual method) which created a distortion of income. It also held that there was no material distortion in the method used by plaintiff. *Cf.* J. Silk, *Advance Payments—Prepaid Income: Recent Developments; An Old Problem Put to Rest*, 30 N.Y.U. Inst. on Fed.Tax. 1651, 1653 (1972).

The Government here, however, is not attempting to exercise its power under section 446(b). Instead, the Government's position is that if plaintiff had been strictly following tax accrual accounting methods, it would have included the capitalized interest in the year it was due and payable under the policyholder loan agreements. That is, the contractual terms fix the company's right to receive that income for purposes of Treas.Reg. § 1.446–1(c)(1)(ii). The court in *Morgan Guaranty* also recognized that the insurance company cases were dealing with the question of whether an item satisfied the all events test, not whether the Commissioner could require a different method of accounting. 218 Ct.Cl. at 73, 585 F.2d at 998. Accordingly, the arguments mustered by plaintiff, paralleling the holding of *Morgan Guaranty*, are not helpful; nor is *Boise Cascade*. We are not dealing with issues of abuse of discretion, but, rather, the interpretation of the all events test.

Moreover, we note that the Seventh Circuit also found for a taxpayer in a section 446(b) abuse-of-discretion type case, similar to *Morgan Guaranty*. In fact, that case, *Artnell Co. v. Commissioner, supra*, was relied on by the court in *Morgan Guaranty, id.*, 218 Ct.Cl. at 71, 585 F.2d at 997; and *Artnell Co.* cannot be claimed to have overruled *Franklin Life* (both cases are out of the Seventh Circuit). In our view, this fact serves as a further illustration of the differences between the question put to us today and that which we reached in *Morgan Guaranty* and *Boise Cascade*.

Therefore, we hold that the all events test is satisfied for capitalized interest on these insurance policyholder loan transactions at the due date when the capitalized interest is due and payable in advance under the terms of the policyholder loan agreement.

## CONCLUSION

After consideration of all the arguments, we grant defendant's cross motion for partial summary judgment, deny plaintiff's motion for partial summary judgment, and dismiss the petition to that extent.