**NORTHERN LIFE INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**NORTHERN LIFE INSURANCE COMPANY, Plaintiff-Cross Appellant,**

v.

**UNITED STATES of America, Defendant-Cross Appellee.**

Nos. 81–3253, 81–3266.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1982.

Decided Aug. 24, 1982.

Mitchell Olejko, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for Northern Life.

David I. Pincus, Washington, D. C., argued for United States; Michael L. Paup, Chief, App. Section, Washington, D. C., on brief.

Before WRIGHT, SKOPIL and ALARCON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Northern Life Insurance Company (Northern Life) seeks reversal of the district court's denial of two of its refund claims. The United States (IRS) seeks reversal of the one refund claim granted Northern Life. We must decide: (1) whether prepaid interest accrues when it is paid, or when it is earned; (2) whether Northern Life filed a timely refund claim for 1968; and (3) whether Northern Life received taxable income when it repossessed a building it sold on a contract.

## PREPAID INTEREST

Northern Life loans policy holders amounts up to the cash surrender value of their policies. From the amount given the borrower, it deducts interest covering the period from when the loan is made to the anniversary date of the policy. Thereafter, interest is due in advance on each anniversary date.

If the interest is not paid within 30 days from the time due, Northern Life adds it to the principal amount of the loan and charges interest on that increased amount, i.e., it is capitalized. If during the year the borrower repays the loan, surrenders the policy, or the policy matures, Northern Life refunds that portion of the prepaid interest not yet earned.

Northern Life reported the interest as income only as it was earned. Thus, if at the close of its tax year, it earned only a portion of the prepaid interest on a policy loan, only that was reported. The IRS assessed deficiencies because it considered the interest taxable in full when it was paid, regardless of Northern Life's contingent duty to refund.

■ The district court's decision in favor of the IRS followed four other circuit courts and the Court of Claims. *Union Mutual Life Insurance Co. v. United States*, 570 F.2d 382 (1st Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Southwestern Life Insurance Co. v. United States*, 560 F.2d 627 (5th Cir. 1977), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); *Jefferson Standard Life Insurance Co. v. United States*, 408 F.2d 842 (4th Cir.), *cert. denied*, 396 U.S. 828, 90 S.Ct. 77, 24 L.Ed.2d 78 (1969); *Franklin Life Insurance Co. v. United States*, 399 F.2d 757 (7th Cir. 1968), *cert. denied*, 393 U.S. 1118, 89 S.Ct. 989, 22 L.Ed.2d 122 (1969); *Life Insurance Co. v. United States*, 650 F.2d 250 (Ct.Cl.1981). We decline to hold differently. *First Charter Financial Corp. v. United States*, 669 F.2d 1342, 1345 (9th Cir. 1982).

■ Income accrues when the right to receive it becomes fixed, *Schlude v. Commissioner*, 372 U.S. 128, 83 S.Ct. 601, 9 L.Ed.2d 633 (1963), even if later events may require the recipient to repay it. *North American Oil v. Burnet*, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932); *Union Mutual Life Insurance Co. v. United States*, 570 F.2d 382, 385 (1st Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). By contract, Northern Life has the right to receive the full amount of annual interest on the policy anniversary date. It accrues and is taxable then.

We are unpersuaded by the Tax Court's opinion in *Banker's Union Life Insurance Co. v. Commissioner*, 62 T.C. 661 (1974), upon which Northern Life relies so heavily. In *Banker's Union*, the Tax Court concluded that this prepaid interest should not be taxed until it is earned. Not only have all cases decided after *Banker's Union* rejected its holding, but it is based on erroneous conclusions.

The Tax Court found the capitalization of the unpaid interest a mere "reallocation of funds," without economic benefit to the insurance company. *Id.* at 681. But, adding the interest to the balance of the loan in-

creases the insurance company's assets by increasing its accounts receivable. In addition, this is more than a paper increase because the insurance company remains, at all times, fully secured for the amount of the loan. Because the loan and interest due cannot exceed cash surrender value, the insurance company does not face the risk of losing its asset.

We affirm the district court's decision that the interest was taxable when paid.

## TIMELY CLAIM

Northern Life concedes that, to the extent its refund claim for 1968 exceeded $29,405, it was untimely.[1] It argues, however, that because the IRS extended its time for filing *refund suits* on rejected *refund claims*, and inadvertently included 1968 in the list of years covered, the IRS either waived the statute of limitations or is estopped from asserting it.

■ We reject the waiver argument. The filing of a timely claim is jurisdictional for a refund suit and cannot be waived. *Crismon v. United States*, 550 F.2d 1205, 1206 (9th Cir.) (per curiam), *cert. denied*, 434 U.S. 807, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977); *Vishnevsky v. United States*, 581 F.2d 1249 (7th Cir. 1978).

■ We also dismiss the estoppel claim. At a minimum, estoppel requires an act by a government agent, upon which the taxpayer relies to its detriment, under circumstances where it may reasonably rely. *Johnson v. Williford*, 682 F.2d 868, 870–72 (9th Cir. July 30, 1982); *Tonkonogy v. United States*, 417 F.Supp. 78 (S.D.N.Y.1976).

■ Northern Life fails because it can point to no government action on which it relied when it allowed the statute of limitations to expire on the 1968 refund claim. We fail to see how the refund suit exten-

sion letters, sent by the government in 1977, prevented Northern Life from filing a timely claim.

The district court correctly found the excess 1968 refund claim untimely filed.

## BUILDING REPOSSESSION

In June 1965, Northern Life sold the Northern Life Tower on a real estate contract secured by the building. The Tower sold for $2,590,000, leaving Northern Life a $1,590,495 realized gain over its adjusted basis of $999,505.

Because life insurance companies were not subject to capital gains tax before 1958, the Code reduces an insurance company's gain on the sale or disposition of property acquired before that date. 26 I.R.C. § 817. Appreciation attributable to years before 1959 is subtracted from the realized gain. Northern Life's pre-1959 appreciation was $1,571,893, which left it with a recognized and taxable gain of only $18,602. Northern Life reported and paid tax on that amount in 1965.

■ Some time in 1966, the buyer defaulted on the contract, and Northern Life repossessed the Tower. The buyer forfeited the $237,343 it had paid on the contract prior to default. We must decide whether Northern Life must pay tax on any or all of that forfeited amount.

Section 1038 addresses reacquisitions of real property sold on contracts secured by that property. The purpose of § 1038 is to annul the uncompleted sale and return the seller to its presale position. Generally, it does this by taxing any forfeited amounts the seller received and adjusting the seller's basis to what it was prior to the sale.

The statutory scheme best achieves its purpose when no nonrecognition provisions, such as § 817, are involved and the seller

---

1. In 1972, Northern Life and the IRS signed an agreement extending the time the IRS might assess tax for 1968 until June 30, 1973. This agreement simultaneously extended Northern Life's time for filing a refund claim to December 30, 1973, or two years from the date it paid any assessed tax. 26 U.S.C. §§ 6511(c)(1), (b)(2)(B).

In February 1973, the IRS assessed Northern Life a deficiency of $29,405 for 1968. Northern Life paid this deficiency on March 1, 1973 and had until March 1, 1975 to file a refund claim for $29,405. December 1973 remained the deadline for any 1968 refund claim over $29,405. Northern Life did not file a refund claim until August 30, 1974. The claim was timely only for $29,405.

reports its gain on the installment method. Under § 1038(b)(1), any money forfeited on the contract above what was already taxed, is taxed on reacquisition; i.e., amount forfeited—amount already reported as income = amount taxable on reacquisition. Section 1038(b)(2) limits the amount taxable under § 1038(b)(1) to the gain the seller could have realized had the sale been completed; i.e., total sale price—(adjusted basis + amount already reported as income) = limitation.

Section 1038(c) determines the seller's basis in the reacquired property. Beginning with the seller's basis in the buyer's indebtedness, § 1038(c) adds any amount taxed under § 1038(b). Normally, this adjustment returns the seller to its presale basis.[2]

The scheme works less well when, even though no nonrecognition provisions are involved, the seller pays tax on its total gain in the year of sale. In this situation, regardless what has been paid on the contract when the buyer defaults, § 1038(b) requires no additional tax. Instead, the seller's basis in the property is adjusted according to whether it received more or less on the contract than was taxed previously as gain. If the seller received less, rather than refund the overpayment of tax, the Code merely provides for the property's basis to be increased so that the seller need not be taxed on the amount again. If the seller received more, the Code lowers its presale basis in the property so that the seller eventually will be taxed on this amount.[3]

2. The following example illustrates how § 1038 applies when the seller reports his gain on the sale using the installment method and no nonrecognition provisions apply:

Facts: 

| | | | | |
|---|---|---|---|---|
| Adjusted Basis | $100 | | | Seller elects to report |
| Sale Price | $200 | | | his gain on the install- |
| Realized Gain | $100 | | | ment method. |

The buyer pays 10% down, or $20, and signs a 9-year note with payments of $20 per year. After the second payment, the buyer defaults. Buyer forfeits the $60 it has paid on the contract.

| | | | | |
|---|---|---|---|---|
| § 1038(b)(1): | Amount forfeited | | | $60 |
| | Less: amount reported by seller as income prior to reacquisition (60 x [(200 – 100)/200]) | | | 30 |
| | Amount taxable | | | $30 |
| § 1038(b)(2): | Sale Price | | | $200 |
| | Less: Adjusted Basis | | 100 | |
| | Amount already reported | | 30 | 130 |
| | Limitation on amount taxable | | | $ 70 |
| § 1038(b): | Amount taxable on reacquisition | | | $30 |
| § 1038(c): | Adjusted basis of buyer's indebtedness to the seller (140 – [140 x 100/200]) | | | $ 70 |
| | Amount taxed under § 1038(b) | | | 30 |
| | Seller's basis in the reacquired property | | | $100 |

Under the above assumptions, the seller is always returned to its presale basis, increased by anything extra it paid to get the property back, except in one instance. If the buyer forfeits more on the contract than the seller's original basis in the property, § 1038 will not tax that return of the seller's investment on reacquisition. Instead, the seller's basis is decreased by the return of investment and it will pay tax on this only on resale. This is the only time Congress allowed deferral under the general rules of § 1038.

3. The following examples illustrate how § 1038 applies when the seller reports his gain on the sale in the year of sale, and no nonrecognition provisions apply:

FACTS: 

| | | | | |
|---|---|---|---|---|
| Adjusted Basis | $100 | | | Seller elects to pay tax |
| Sale Price | 200 | | | on his total gain in the |
| Realized Gain | $100 | | | year of sale. |

a. The buyer pays 10% down, or $20, and signs a 9 year note with payments of $20 per year. After the second payment, the buyer defaults. Buyer forfeits the $60 it has paid on the contract.

The scheme does not appear to work at all when a nonrecognition provision lowers the seller's realized gain, the seller pays tax on the entire recognized gain in the year of sale, and then reacquires the property after more has been paid on the contract than was previously reported as income.[4] That is the situation here.

| § 1038(b)(1): | Amount forfeited | | $ 60 |
| | Less: amount reported by seller as income prior to reacquisition | | 100 |
| | Amount taxable | | $   0 |
| § 1038(b)(2): | Sale Price | | $200 |
| | Less:  Adjusted Basis | $100 | |
| | Amount already reported | 100 | 200 |
| | Limitation on amount taxable | | $   0 |
| § 1038(b): | Amount taxable on reacquisition | | $  0 |
| § 1038(c): | Adjusted basis of buyer's indebtedness to the seller | | $140 |
| | Amount taxed under § 1038(b) | | 0 |
| | Seller's basis in the reacquired property | | $140 |

b.  The buyer pays 10% down, or $20, and signs a 9 year note with payments of $20 per year.  After the fifth payment, the buyer defaults.  Buyer forfeits the $120 it has paid on the contract.

| § 1038(b)(1): | Amount forfeited | | $120 |
| | Less:  amount reported by seller as income prior to reacquisition | | 100 |
| | Amount taxable | | $ 20 |
| § 1038(b)(2): | Sale Price | | $200 |
| | Less:  Adjusted basis | $100 | |
| | Amount already reported | 100 | 200 |
| | Limitation on amount taxable | | $   0 |
| § 1038(b): | Amount taxable on reacquisition | | $  0 |
| § 1038(c): | Adjusted basis of buyer's indebtedness to the seller | | $ 80 |
| | Amount taxable under § 1038(b) | | 0 |
| | Seller's basis in the reacquired property | | $ 80 |

4.  The following example illustrates how § 1038 applies under both parties' interpretations.  The numbers have been simplified but remain in approximately the same ratio:

| FACTS: | Adjusted Basis | $100 | Seller elects to pay tax |
| | Sale Price | 250 | on his realized gain in |
| | Realized Gain | $150 | the year of sale. |
| | § 817 Nonrecognition | 148 | |
| | Recognized Gain | $  2 | |

Buyer signs a note and begins payments but defaults in the second year of the contract.  Buyer forfeits the $25 it has paid on the contract.

| § 1038(b)(1): | Amount forfeited | | $ 25 |
| | Less:  amount reported by seller as income prior to reacquisition | | 2 |
| | Amount taxable | | $ 23 |

a.  IRS Interpretation

| § 1038(b)(2): | Sale Price | | $250 |
| | Less:  Adjusted basis | $100 | |
| | Amount already reported | 2 | 98 |
| | Limitation on amount taxable | | $148 |
| § 1038(b): | Amount taxable on reacquisition | | $ 23 |
| § 1038(c): | Adjusted basis of buyer's indebtedness to the seller | | $225 |
| | Amount taxed under § 1038(b) | | 23 |
| | Seller's basis in the reacquired property | | $248 |

Both sides agree that § 1038 applies because Northern Life reacquired real property that it sold on a contract. Northern Life also concedes that under § 1038(b)(1), the excess of the $237,343 it received from the buyer, over the $18,602 on which it paid tax, should be taxable. It argues, however, that the limitation in § 1038(b)(2) protects this excess from tax.[5]

The § 1038(b)(2) limitation, as discussed above, limits the tax on reacquisition to the gain the seller could have realized if the sale had been completed. Northern Life asserts that even though Congress wrote *realized* gain, it could not have intended that when a nonrecognition provision exempted part of the gain on the sale. Northern Life's realized gain was $1,590,495, but it would have recognized only $18,602 even if the sale had been completed. To tax more than this, it argues, would conflict with the benefit given by § 817.

The IRS responds that Congress not only intended *realized* gain in § 1038(b)(2), but that intent does not conflict with any benefit intended by § 817. It argues that the nonrecognition provision of § 817 applies only upon the sale or other disposition of property. Section 1038, on the other hand, applies only when a sale must be reversed because the buyer has defaulted on the contract and the seller unexpectedly receives the property back.

The district court found that the sections conflicted, and that § 817 should prevail despite language in § 1038 that the latter applies notwithstanding any other provision. We cannot agree.

Section 1038 does not apply to sales. Section 817 does not apply to reacquisitions. Even though application of § 1038 in this situation, under the IRS's interpretation, does not place Northern Life precisely in its presale position, the plain language of the statute and the anomalous result, were we to accept Northern Life's argument, compel us to reverse.

The statute tells us to calculate the § 1038(b)(2) limitation by subtracting the adjusted basis from the sale price, and then reducing that figure by any gain from the sale previously taxed. This formula leaves no room for applying a nonrecognition provision. Nor does the legislative history cited by Northern Life, were we to consider it, support a different interpretation.

In addition, Congress did address in § 1038 two of the most widely used nonrecognition provisions, the rollover of gain on the sale of a residence and the one time exclusion of gain on the sale of a residence by a person over 55. 26 U.S.C. § 1038(e). Neither is treated as Northern Life would have us treat § 817. Furthermore, the inclusion of a method to handle these nonrecognition provisions implies that Congress was aware that a conflict could arise if a seller reacquired property, the sale of which involved nonrecognition.

Finally, the IRS's position ensures that the windfall forfeiture from the incompleted sale will be taxed.[6] If it were not taxed

b. Northern Life Interpretation

| § 1038(b)(2): | Sale Price | | $250 |
|---|---|---|---|
| | Less: Adjusted basis | $100 | |
| | Nonrecognized gain | 148 | |
| | Amount already reported | 2 | 250 |
| | Limitation on amount taxable | | $ 0 |
| § 1038(b): | Amount taxable on reacquisition | | $ 0 |
| § 1038(c): | Adjusted Basis of buyer's indebtedness to the seller | | $225 |
| | Amount taxed under § 1038(b) | | 23 |
| | Seller's basis in the reacquired property | | $225 |

Neither interpretation returns Northern Life to its presale position. Nor does any theory we can discover explain the results obtained. The statute simply does not address this situation.

5. *See* Northern Life's interpretation in footnote 4, part b.

6. Adding a resale to the calculations in footnote 4 demonstrates this point:

now, and § 817 applies on a resale of the Tower,[7] the amount may escape tax entirely if the next sale price is not significantly higher. Even if the price is high enough to tax this windfall, Northern Life will have deferred the tax for a number of years. We do not lightly infer that Congress intended to allow deferral of income.

We reverse the district court's grant of Northern Life's refund claim on this issue.

AFFIRMED IN PART AND REVERSED IN PART.

---

a. Resale for $250 after reacquisition

(1) IRS interpretation

| | |
|---|---|
| Basis in the reacquired property | $248 |
| Sale Price | 250 |
| Realized Gain | 2 |
| § 817 Nonrecognition | 148 |
| Recognized Gain | $ 0 |

Thus, under the IRS's interpretation, Northern Life would have paid tax on $25, the precise amount of windfall it received when the first buyer defaulted on the contract.

(2) Northern Life interpretation

| | |
|---|---|
| Basis in the reacquired property | 225 |
| Sale Price | 250 |
| Realized Gain | 25 |
| § 817 Nonrecognition | 148 |
| Recognized Gain | 0 |

Thus, under Northern Life's interpretation, it would have paid tax only on $2, $23 less than the amount of windfall it received.

b. Resale for $400 after reacquisition for $400

(1) IRS interpretation

| | |
|---|---|
| Basis in the reacquired propery | $248 |
| Sale Price | 400 |
| Realized Gain | 152 |
| § 817 Nonrecognition | 148 |
| Recognized Gain | $ 4 |

---

(2) Northern Life interpretation

| | |
|---|---|
| Basis in the reacquired property | $225 |
| Sale Price | 400 |
| Realized gain | 175 |
| § 817 Nonrecognition | 148 |
| Recognized Gain | $ 27 |

Thus, if the resale price were sufficiently high, Northern Life would eventually be taxed on the $23 left over from the prior sale, but it would have been allowed to defer this income for awhile. We doubt that Congress intended such a result.

7. The IRS concedes that § 817 would apply on a resale of the Tower because it would still be considered an asset Northern Life acquired before 1959.

