EXCHANGE SECURITY BANK et al.,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

Ellen Gregg INGALLS et al., Plaintiffs-
Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 73-1335.

United States Court of Appeals,
Fifth Circuit.

April 19, 1974.

Robert McDavid Smith, Allen D. Rushton, Birmingham, Ala., for plaintiffs-appellants.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., Wesley J. Filer, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before BELL, COLEMAN and RONEY, Circuit Judges.

COLEMAN, Circuit Judge:

The District Court denied plaintiff-taxpayers' claim for a tax refund. We reverse.

The operative facts begin with the dispute between Robert Ingalls, Jr., president of the family corporation, Ingalls Iron Works, Inc. (the Company), and his mother Ellen Gregg Ingalls, over 2,287 shares of company stock. Under a 1943 agreement, the Company had an option to purchase these shares at the death of its owner, Robert Ingalls, Sr. Upon his death in 1951, Mrs. Ingalls became president of the Company. The Company did not exercise its stock purchase option.

In 1952, the son, Robert Ingalls, Jr., took over as president of the Company. The Company then claimed the option to purchase the stock of Mr. Ingalls, Sr. from the estate. The estate resisted the purchase. This resulted in litigation in state court between Robert Ingalls, Jr.,

and the estate of his father over the ownership of the stock. The purchase price of the stock was placed in escrow by the Company pending the outcome of litigation and the stock was *treated* as treasury stock.

Two other law suits are also pertinent to this appeal.

Throughout the existence of this closely-held family corporation, Mr. Ingalls, Sr. and his wife Ellen used Company money to pay personal obligations. As a result, both the estate of Mr. Ingalls and Mrs. Ingalls owed certain sums of money to the Company. In 1956, in Federal District Court, the Company filed Civil Action No. 8450 against Mrs. Ingalls for $48,459, due by account stated in 1951. Mrs. Ingalls counterclaimed that the Company had misappropriated $193,217 of her money. As the result of a resolution of the stockholders, pledging that if Mrs. Ingalls pled the statute of limitations she would be removed as a director of the Company, she did not so defend. The case resulted in a jury verdict in favor of the Company. On appeal, this Court reversed because an account stated had not been proved, Ingalls v. Ingalls Iron Works, 5 Cir., 1958, 258 F.2d 750. On remand, the Company alleged the money was owed on simple account, Mrs. Ingalls continued her counterclaim and amended her answer to include the statute of limitations.

In 1954, in Federal District Court, the Company filed Civil Action No. 7651 against the estate of Robert Ingalls, Sr. for $188,532 allegedly owing at the time of his death. The estate denied liability and counterclaimed for recognition as owner of the disputed 2,287 shares of stock and for dividends on said stock equal to those paid on other Company stock.

Thus, in both cases, the Company sought judgments totalling $236,991, while Mrs. Ingalls countered for $193,217, and the estate of the deceased senior Ingalls sued to settle the status of the stock.

On March 10, 1959, as the case in Civil Action No. 8450 was ready for retrial, the parties entered into an agreement which settled all pending litigation. This agreement was negotiated and signed in open court in the presence of the United States District Judge. It was signed by Robert Ingalls, Jr., individually and as President of Ingalls Iron Works Company. The Company was represented by its general counsel, staff, and several of its directors. Judge Grooms retained the signed copy of the settlement agreement.

The agreement stipulated that the estate of Mr. Ingalls was the rightful owner of the 2,287 shares of Company stock but future rights to its ownership was restricted in favor of the Company; back dividends on the stock amounting to over $500,000 were waived by the estate except for $175,000 to be paid to appellants' attorneys for their services; and the Company was forthwith to dismiss with prejudice its suits for the debts owed the Company by the senior Ingalls and his wife. All counterclaims were likewise to be dismissed.

Under the settlement agreement, the indebtedness of Mrs. Ingalls and of the estate of Mr. Ingalls was extinguished. Since valuable rights had been transferred to the Company as a consideration for cancellation of the debts, it was thought that for tax purposes no income had been realized. The cancelled debts were not reported as gross income for any year. The Internal Revenue Service felt, however, that the appellants had realized income in the full amount of the cancelled debts and *for the year 1960* assessed each with a deficiency in reported gross income accordingly.

The assessments were paid and separate suits filed for a refund. Mrs. Ingalls is now deceased, and her estate was substituted in her stead. The suits were joined for trial and are so treated on this appeal.

The appellant-taxpayers allege that they are entitled to a refund, with interest, of the taxes paid on the assessed de-

ficiency because: (1) they *realized* no income as the result of the 1959 agreement; (2) if they realized income, it should be taxed at long term capital gain rates and not at ordinary income rates; (3) if they realized income, it was in the year 1959 and not 1960; and (4) if they realized income, it is dividend income subject to the 4% dividends received credit.

We agree as to Point 3 and do not reach the other issues raised.

Following the March 10, 1959 settlement, the Company allegedly began to doubt its validity on the pretext that Robert Ingalls, Jr. did not have the authority to bind Ingalls Iron Works Company and the agreement had to be ratified by the Company's Board of Directors. In findings of fact and conclusions of law, filed June 18, 1959, Judge Grooms held that the agreement was a valid and binding contract and ordered its enforcement. In amended findings dated August 18, 1959, Judge Grooms found that the taxpayers had been willing and able to comply with the contract and ordered the Company to immediately pay the $175,000 to the taxpayers. It was further ordered that final judgment with prejudice be rendered in Civil Action No. 7651 and 8450, Ingalls Iron Works Company v. Ingalls, 177 F.Supp. 151 (N.D.Ala., 1959).

The Company appealed Judge Grooms' enforcement order and this Court in August, 1960 affirmed, simply adopting the opinion below, Ingalls Iron Works Company v. Ingalls, 5 Cir., 1960, 280 F.2d 423. In September, 1960, the Company Board of Directors directed compliance with the March 10 agreement. Thereafter, the Company paid the taxpayers the $175,000. Although it was not until 1961 that the Company charged the debts against retained earnings, it was made effective as of December 31, 1960.

The Government argues that 1960 was the year in which appellants realized the income because it was then that Judge Grooms' order was affirmed by the Court of Appeals and in obedience there-of the Company directed debts discharged. Taxpayers argue that the income was realized in 1959 when the settlement was made on March 10 or at least in August when Judge Grooms found appellants had performed all their obligations under the contract.

■ For tax purposes, we view the "substance" and not the "form" of a transaction, Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S. Ct. 1270, 3 L.Ed.2d 1360 (1959); Haag v. C. I. R., 8 Cir., 1964, 334 F.2d 351. It seems indisputably clear that after the August 18, 1959 District Court order enforcing the March 10 contract, nothing whatever took place but an unsuccessful appeal of that order.

The Supreme Court said in Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952):

"An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, *as a practical* matter, he derives readily realizable economic value from it. Burnet v. Wells, 289 U.S. 670, 678, 53 S.Ct. 761, 764, 77 L. Ed. 1439; Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916. . . .

". . . This statutory policy is invoked in the interest of orderly administration. '[C]ollection of the revenue cannot be delayed, nor should the Treasury be compelled to decide when a possessor's claims are without legal warrant.' [Emphasis added.] National City Bank v. Helvering, 2 Cir., 98 F.2d 93, 96."

See, also, North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932). The Supreme Court there held that income was realized when the debtor obtained a claim of right and not at a later time when the litigation had terminated.

As far as the incongruous result envisioned by the government of the taxpayer defending payment suits while simultaneously he was "realizing" income from cancellation of the indebtedness,

the fact here is that the appellants were only defending the appeal of a final judgment which reconfirmed a settlement made in the very presence of the Court and which extinguished the debts. This settlement, judicially confirmed, released the debts and gave the appellants a claim of right to the benefit in question. It judicially fixed the time at which realization of income occurred, North American Oil Consolidated v. Burnet, *supra*, even if one side did try to drag its feet in complying with its agreement.

■ This leaves only the fact that the Company took no action to remove the debts from its books until 1960. This cannot be the determinative event since the taxpayer in a cancellation of debt situation has no control over and no knowledge of when the Company actually removes the debt from its books. It would be illogical to hold that a taxpayer realized cancellation of indebtedness income only when the creditor actually removes the debt from the books, even though the debtor has a claim of right established in a previous year. The taxpayer could have no way of knowing when the debt had been formally discharged, but he certainly knows when he established a claim of right to the gain received from the extinguished obligation of the debt.

The cases cited by the government are not contrary to our holding here. See Bear Manufacturing Company v. United States, 7 Cir., 1970, 430 F.2d 152, 154–155, cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 632 (1971); Shephard v. Commissioner of Internal Revenue, 6 Cir., 1965, 340 F.2d 27, 30, cert. denied, 382 U.S. 813, 86 S.Ct. 29, 15 L.Ed.2d 61 (1965); Allen v. Commissioner of Internal Revenue, 1 Cir., 1941, 117 F.2d 364, 368; Hudson v. Commissioner of Internal Revenue, 6 Cir., 1938, 99 F.2d 630, 632, cert. denied, 306 U.S. 644, 59 S.Ct. 584, 83 L.Ed. 1044 (1939); Cohen v. Commissioner of Internal Revenue, 6 Cir., 1935, 77 F.2d 184, 185–186, cert. denied, 296 U.S. 610, 56 S.Ct. 129, 80 L. Ed. 433. In each of these cases the

bookkeeping entry or other corporate activity charging the debts off the corporate books constituted the corporate action which cancelled the debt. In this case, the corporate action which led to the cancellation of the debt occurred upon the execution of the March agreement. Applying the standard of review established in Gibbs v. Tomlinson, 5 Cir., 1966, 362 F.2d 394, we hold that the District Court misapprehended the effect of the latter affirmation of the agreement by the appellate court, the dismissal of the suits, and the subsequent cancellation of the debts on the corporate books. The appellate action merely affirmed the fact that the debts were cancelled by the agreement as accepted by the District Court. Cf. North American Oil Consolidated v. Burnet, *supra*. The dismissal of the suit was required because the debts had been cancelled by the agreement and court order. By the time the corporation removed the debts from its books, the debts had been terminated and the bookkeeping entries were necessary only to bring the corporate books into line, and had no legal effect one way or the other.

■ The right to receive cancellation of the debt accrued to appellants in March, 1959, and it was reaffirmed by the judicial order in August, 1959, Texas Trailercoach, Inc. v. C. I. R., 5 Cir., 1958, 251 F.2d 395. At that point it was determined with certainty that the debt could never be inforced, Koehring v. United States, 421 F.2d 715, 190 Ct. Cl. 898 (1970); Helvering v. Jane Holding Corp., 8 Cir., 1940, 109 F.2d 933, cert. denied, 310 U.S. 653, 60 S.Ct. 1102, 84 L.Ed. 1418 (1940). The faint possibility of required revival as a consequence of a future appeal to this Court did not change the actual realization of the gain, James v. United States, 366 U. S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961); North American Oil Consolidated v. Burnet, *supra*; Buder v. United States, 8 Cir., 1966, 354 F.2d 941. Indeed, it is clear that if the debt had been revived, appellants would still have been required to report the realized in-

come and subsequently claim the loss, United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951).

It should be added that the record demonstrates that the Company contested *the settlement* on two issues of affirmative compliance on its part, not on the debts in question. Furthermore, due to the statute of limitations, the settlement contract reached in open court, and judicial confirmation, the noncollectibility of the debts was not really in doubt in 1959.

Since appellants did not realize in 1960 the income for which they were assessed a deficiency as of that year, the case is remanded to the District Court for further proceedings not inconsistent with this decision.

Reversed and remanded.