BENJAMIN AND BEATRICE RIVERA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rivera v. Commissioner
Docket No. 22827-91
United States Tax Court
T.C. Memo 1993-609; 1993 Tax Ct. Memo LEXIS 620; 66 T.C.M. (CCH) 1682; December 21, 1993, Filed *620 Pro se: Benjamin and Beatrice Rivera. For respondent: David L. Click and Susan B. Hurwitz. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1987 in the amount of $ 10,534, and an addition to tax under section 6653(a)(1)(A) [1] of $ 526.70, and an addition to tax under section 6653(a)(1)(B) in the amount of 50 percent of the interest attributable to the full deficiency. The issues for decision are: (1) Whether petitioners had income from cancellation of indebtedness in 1987, and (2) whether petitioners are liable for the additions to tax for negligence under section 6653(a) for 1987. FINDINGS OF FACT Petitioners, husband and wife, at the time of filing the petition in this case, resided in Takoma Park, Maryland. *621 Petitioners filed a joint Federal income tax return for the calendar year 1987. On September 20, 1976, petitioners entered into an agreement with the Small Business Administration (SBA), under which they borrowed $ 50,000 from the SBA. Petitioners executed a note payable to SBA for the $ 50,000 amount (the note). The note was for a term of 10 years and interest was at 7-3/4 percent per annum. Monthly interest payments of $ 323 were to begin 1 month from the date of the note, and monthly principal payments of $ 610 were to begin 4 months from the date of the note. To secure the note, petitioners gave a deed of trust to the SBA on property they owned located at 813 Forston Drive, Takoma Park, Maryland (the property). On February 3, 1981, the SBA wrote a letter to petitioners informing them that the note was in default and made demand for payment of the note in full. The letter stated that as of the date of the letter, none of the principal of the note had been paid. Shortly thereafter Mr. Rivera was contacted by the office of the United States Attorney for the District of Maryland concerning the lack of payment on the note. Thereafter, a lawsuit was instituted in the United *622 States District Court for the District of Maryland for payment of the note (the lawsuit). On August 20, 1987, petitioners sent an offer in compromise to the SBA. The offer in compromise stated that petitioners owed the SBA $ 50,550 of principal and $ 39,281 of interest on the note. In order to cancel this debt, petitioners offered to pay $ 17,134.04 on or before January 2, 1988, with the understanding that the SBA would then release its lien on the property. The offer in compromise states that: It is understood that this offer will be considered and acted upon in due course and that it does not afford relief from the obligation sought to be compromised unless and until it is accepted in writing by The Small Business Administration and there has been full compliance with the terms of the offer.
Petitioners were informed by an employee of the SBA that since the note had been referred to the Department of Justice for the commencement of foreclosure proceedings, any offer in compromise should be submitted to the office of the United States Attorney for Maryland. Sometime prior to September 18, 1987, petitioners entered into a settlement agreement (the settlement agreement) *623 with the office of the United States Attorney for Maryland for settlement of the lawsuit. The settlement agreement contained the following provisions: 1. Payment. Contemporaneously with full execution hereof, the Riveras shall deliver to the United States the sum of Ten Thousand Dollars ($ 10,000.00) (hereinafter the "First Payment"). The Riveras shall also pay, on or before the close of business on January 2, 1988, an additional sum of Ten Thousand Dollars ($ 10,000.00) for a total of Twenty Thousand Dollars ($ 20,000.00) (hereinafter the "Second Payment"). 2. Release. In consideration for the payments made hereunder by Riveras, the United States of America, by and through its undersigned duly authorized agent, shall execute releases from any and all liability under the Promissory Note, in forms which are attached hereto as Exhibits A and B. Said releases shall include a release of any and all liens in favor of the United States of America securing payment on the Promissory Note.
On September 18, 1987, petitioners made payments of $ 4,000 and $ 6,000 to the United States Department of Justice. The letter from petitioners' attorney accompanying the payments *624 enclosed a copy of the settlement agreement which was stated to be executed by petitioners. The letter also stated that "The Release form which is part of the Agreement is also enclosed for your signature for future delivery after the payment of the second settlement installment". On November 10, 1987, the United States District Court for the District of Maryland issued a Local Rule 39 Order (the order) which stated that the court had been advised that the lawsuit had been settled and therefore the lawsuit was dismissed. The order stated that the entry of the order was "without prejudice to the right of a party to move for good cause to reopen this action if settlement is not consummated". On December 28, 1987, petitioners made payments of $ 5,500 and $ 4,500 to the United States Department of Justice. Mr. Rivera personally carried the two checks making the payments to the office of the United States Attorney for Maryland. On January 11, 1988, a letter was written to the SBA by a senior debt collection officer in the United States Attorney's office for the District of Maryland stating that $ 20,000 had been collected from petitioners and the SBA's claim against petitioners had *625 been closed. This letter further stated that "Any additional amount shown on your records as due from the debtor on his claim is to be adjusted to reflect that the claim has been satisfied in full". After the December 28, 1987, payments, petitioners made no further payments with respect to the note. The SBA kept a record of the payments made on the note. Petitioners' December 28, 1987, payments were recorded as of January 4, 1988. Petitioners deducted the $ 20,000 of payments made on the note in accordance with the settlement agreement as interest expense on their 1987 joint Federal income tax return. The SBA's record lists the payments as payments of interest on the note. On March 8, 1988, Mr. Stuart Shalloway, an attorney/advisor with the SBA, stamped the note "Paid in Full". Respondent in her notice of deficiency to petitioners increased their reported income for 1987 by $ 50,000 with the explanation that the additional income of $ 50,000 was due to "the forgiveness of your Small Business Administration Loan". [2]
*626 OPINION Gross income includes income from the discharge of indebtedness. Section 61(a)(12); sec. 1.61-12(a), Income Tax Regs. The theory underlying the inclusion in income of cancellation of indebtedness is that the cancellation frees assets previously offset by the indebtedness. United States v. Kirby Lumber Co., 284 U.S. 1 (1931). In the present case it is clear that petitioners' debt to the SBA was canceled and that this cancellation freed the assets securing the debt. The only question is when was the debt canceled. Respondent determined that the debt was canceled in 1987, and petitioners contend that it was not canceled until 1988. Whether a debt has been discharged is dependent upon the substance of the transaction. Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). [3] A debt is considered discharged at the point in time when it becomes clear that the debt will never be paid. Id. at 445. To determine when such moment occurs, it is necessary to consider the actions of the parties together with other facts and circumstances of the situation. Id. at 445 *627 and cases there cited. In determining when a debt has been canceled, any "identifiable event" which indicates that the debt will not be repaid may be considered. Cozzi v. Commissioner, supra at 445, citing United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398 (1927). The existence of a faint possibility that a debt may be collected does not prevent the recognition of cancellation of debt income. Exchange Security Bank v. United States, 492 F.2d 1096, 1099 (5th Cir. 1974). Cf. Fidelity-Philadelphia Trust Co. v. Commissioner, 23 T.C. 527, 531 (1954). The test is whether the debt as a practical matter will not have to be paid to the creditor. The fact that a creditor has failed to remove a debt from its books does not mean that the debt has not been canceled. Exchange Security Bank v. United States, 492 F.2d 1096, 1099 (5th Cir. 1974). *628 Also, an agreement to cancel a debt in the future will not be deemed to have discharged the indebtedness immediately if the cancellation is contingent upon future events. Walker v. Commissioner, 88 F.2d 170 (5th Cir. 1937), affg. White v. Commissioner, 34 B.T.A. 424 (1936). [4]
Based on the principles above set forth we conclude that petitioners had income from cancellation of indebtedness in the principal amount still owing on the SBA note in 1987. At the end of 1987 no contingency existed as to the forgiveness of the indebtedness. The agreement was that the indebtedness was forgiven upon the payment of the second $ 10,000. This occurred in 1987 although under the agreement petitioners could have waited until January 2, 1988, to make the final payment. In some cases there are several points in time in which it could be reasonably said that an abandonment of the *629 debt took place. Cozzi v. Commissioner, supra at 435. In the present case, the execution of the settlement agreement, the order from the District Court, and the payment in full of the $ 20,000, together established that full payment of the note would not transpire. All of these events took place during 1987. Petitioners have presented no evidence of events that could be deemed to have established the cancellation of the debt in 1988, instead of 1987. The only events that took place in 1988 were the SBA recording the settlement payments and the note being stamped "Paid in Full". Both of these events were nothing more than ministerial activities by the SBA that were not significant in deciding when the debt was canceled. See Exchange Security Bank v. United States, 492 F.2d 1096, 1099 (5th Cir. 1974). The final issue for decision is whether petitioners are liable for the addition to tax under section 6653(a). This section provides for an addition to tax where an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Petitioners bear the burden of proving that they are not *630 liable for such addition to tax. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Petitioners have failed to meet their burden of proof. The record contains nothing to rebut respondent's determination under section 6653(a). Although there may exist a reasonable dispute as to when the income should be recognized, there is no evidence that petitioners tried to determine the proper year in which to report the income or that they reported the income in another year. Therefore, we hold that petitioners are liable for the addition to tax under section 6653(a). Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. The only other adjustment made in the notice of deficiency was disallowance of a loss of $ 109 which was not placed in issue in this case.↩
3. See also Seay v. Commissioner, T.C. Memo. 1974-305↩.
4. See also Shannon v. Commissioner, T.C. Memo 1993-554↩.