T.C. Summary Opinion 2005-117


UNITED STATES TAX COURT


JUDITH M. DE SHON AND MICHAEL J. DE SHON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5866-04S.                    Filed August 8, 2005.


Michael J. De Shon, pro se.

<u>Sean R. Gannon</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in

effect at the time that the petition was filed.[1]  The decision to

_____

    [1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2001,
the taxable year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 2001 of $5,101 and an accuracy-related penalty under section 6662(a) of $1,020.

After dismissal of petitioner Judith M. De Shon[2] and after concessions,[3] the issues for decision are:

(1)  Whether petitioners received unreported discharge of indebtedness income of $12,253 in taxable year 2001.  We hold that they did to the extent provided herein.

(2)  Whether petitioners are liable under section 6662(a) for an accuracy-related penalty.  We hold that they are not.

---

[2]  Petitioner Judith M. De Shon (Mrs. De Shon) did not appear at trial and did not execute the stipulation of facts. Petitioner Michael J. De Shon (Mr. De Shon) is not admitted to practice before this Court and is therefore not authorized to represent Mrs. De Shon in this Court notwithstanding a purported durable power of attorney.  See Rules 24, 200.  Accordingly, the Court will dismiss this action as to Mrs. De Shon.  Rule 123(b). Decision, however, will be entered against Mrs. De Shon consistent with the decision entered against Mr. De Shon as to the deficiency and the accuracy-related penalty.

[3]  Respondent concedes that petitioners did not receive Social Security benefits of $246.  Petitioners concede that they received:  (1) Social Security benefits of $6, (2) interest income of $58 from Catholic Aid Association (Catholic Aid), (3) a taxable distribution of $6,611 from Catholic Knights Insurance Society, and (4) a taxable distribution of $3,001 from Catholic Aid.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioners resided in Mount Prospect, Illinois. References to petitioners individually are to Mr. De Shon or Mrs. De Shon.

From as early as 1986 through May 1999, petitioners had a joint Discover credit card account ending with the numbers 790 (account 790). The credit card statement for this account as of July 26, 1998, indicated that petitioners made a payment of $130 and purchases of $192 and incurred finance charges of $128. The account balance was $7,427. In September 1998, Mr. De Shon filed by telephone with Discover a dispute concerning the balance due as reflected in the July 26, 1998 statement. Mr. De Shon did not dispute the purchases made but rather disputed the amount of the balance due.

The credit card statement as of August 26, 1998, indicated that petitioners made a purchase of $46 and incurred a late fee of $25 and finance charges of $134. The account balance was $7,631. The statement contained language indicating that the account was past due and demanded payment of such amount. In October 1998, Mr. De Shon filed by telephone with Discover a dispute concerning the balance due as reflected in the August 26,

1998 statement.  Mr. De Shon again disputed the amount of the balance due.

The credit card statement as of September 26, 1998, indicated that petitioners incurred a late fee of $25, an overlimit fee of $25, and finance charges of $147.  The account balance was $7,828.  The statement contained language indicating that the account was past due and demanded payment of such amount.

The credit card statement as of October 26, 1998, indicated that petitioners incurred a late fee of $25, an overlimit fee of $25, and finance charges of $146.  The account balance was $8,024.  The statement contained language indicating that the account was past due and demanded payment of such amount.

In November 1998, Mr. De Shon submitted to Discover a written dispute.  In response to Mr. De Shon's inquiry, petitioners received from Discover a collection letter dated December 12, 1998, concerning the delinquency of $8,229 in account 790.  The letter stated in part as follows:

> As you know, your account is now four months past due.
>
> We feel that we have been patient in handling your account, but you have not cooperated with us to take care of this serious matter.  To protect Discover Card's interest, we must now take action.
>
> We expect you to send a substantial payment immediately along with your plan for future monthly payments to clear this delinquency.  Please contact us today so that we may discuss this matter.

If we do not hear from you, your account will be reviewed by our department manager.  Your actions determine our handling of this account.

In response, Mr. De Shon faxed to Discover a letter again disputing the amount due.  Mr. De Shon did not receive any communication or correspondence from Discover in response to his dispute, nor did he receive a replacement Discover card when his card expired in May 1999.  Petitioners received their last statement pertaining to account 790 in May or June 1999.  Petitioners did not remit any payments to this account after July 21, 1998.

Petitioners maintained another joint Discover credit card account ending with the numbers 879 (account 879).  The address listed for this account was the same address that was listed for account 790, which is also petitioners' current mailing address.  The credit card statement as of July 13, 2000, indicated a previous balance of $2,462, a purchase identified as "Bravo Reserve previous balance" of $1,155, and a new balance of $3,617.[4]

In early 2002, petitioners received from Discover two Forms 1099-C, Cancellation of Debt, for 2001:  one each for accounts

---

[4]  Respondent introduced at trial a photocopy of this statement and the declaration in lieu of affidavit to which Mr. De Shon objected on the basis of lack of authenticity and completeness.  The Court admitted the evidence on the condition that respondent furnish the original documents to the Court.  Subsequent to trial, respondent submitted to the Court the original documents.  Mr. De Shon's objection is overruled.

790 and 879.  Discover addressed both Forms 1099-C to Mrs. De Shon at her current mailing address.  In the Forms 1099-C, Discover reported that it had canceled the debt due on accounts 790 and 089 of $8,637 and $3,616, respectively, on December 31, 2001.  Petitioners did not contact Discover with respect to either of the Forms 1099-C.

On their Federal income tax return for 2001, petitioners did not report the amounts reported on the Forms 1099-C.

Respondent determined that petitioners failed to report on their tax return for 2001 income from the cancellation of indebtedness of $12,253.  Respondent further determined that petitioners are liable for the accuracy-related penalty for substantial understatement of income tax.

## Discussion

### A.  Discharge of Indebtedness

#### 1.  Applicable Principles

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Under section 7491(a)(1), however, the burden of proof shifts to the Commissioner if, inter alia, the taxpayer first introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability

for income tax.  <u>Higbee v. Commissioner</u>, 116 T.C. 438, 442 (2001).

Gross income includes all income from whatever source derived, including but not limited to discharge of indebtedness. Sec. 61(a)(12); sec. 1.61-12(a), Income Tax Regs.  A discharge of indebtedness generally produces income in an amount equal to the difference between the amount due on the obligation and the amount paid for the discharge.  See <u>Babin v. Commissioner</u>, 23 F.3d 1032, 1034 (6th Cir. 1994), affg. T.C. Memo. 1992-673.  As explained by the United States Supreme Court, the general theory is that to the extent that a taxpayer has been released from indebtedness, the taxpayer has realized an accession to income because the cancellation of indebtedness effects a freeing of assets previously offset by the liability arising from such indebtedness.  <u>United States v. Kirby Lumber Co.</u>, 284 U.S. 1, 3 (1931); see <u>Cozzi v. Commissioner</u>, 88 T.C. 435, 445 (1987).

Debt is deemed discharged the moment it becomes clear that the debt will never have to be paid.  <u>Cozzi v. Commissioner</u>, <u>supra</u> at 445.  The test for determining when this moment occurs requires an assessment of the facts and circumstances surrounding the likelihood of repayment.  <u>Id.</u>  "Any 'identifiable event' which fixes the loss with certainty may be taken into consideration."  <u>Id.</u> (quoting <u>United States v. S.S. White Dental Manufacturing Co.</u>, 274 U.S. 398, 401 (1927)).

2. Account 790

Mr. De Shon contends that they did not receive a discharge of indebtedness because they were not liable for the amount allegedly discharged. In the alternative, Mr. De Shon contends that the discharge of indebtedness did not occur in 2001. Respondent, on the other hand, contends that petitioners received discharge of indebtedness income as reported on the Form 1099-C. We need not address Mr. De Shon's first contention because we decide this issue on the basis of Mr. De Shon's alternative contention.

Having observed Mr. De Shon's appearance and demeanor at trial, we find his testimony to be honest, sincere, and credible. On the basis of the entirety of the record, we do not find that issuance of the Form 1099-C was the identifiable event establishing when Discover discharged petitioners' debt. In light of the facts and circumstances in the instant case, we find that Discover's cessation of debt collection activity in 1999 was the identifiable event fixing the loss with certainty. See Cozzi v. Commissioner, supra at 445.

Petitioners filed their first dispute with Discover in September 1998 and again in October and November 1998. The only response petitioners received was a collection letter dated December 12, 1998. The collection letter indicated that Discover's department manager would determine the handling of

petitioners' account if they failed to contact Discover. Petitioners made no further attempts to contact Discover.

Although Discover continued to send petitioners monthly statements through May or June 1999, which presumably contained language stating that petitioners' account was past due and demanded payment, Discover did not contact petitioners concerning their dispute. Moreover, petitioners did not receive any additional collection letters after December 1998, and Discover did not issue a new card when Mr. De Shon's card expired in May 1999. The evidence in the record demonstrates that because petitioners received no further communication from Discover after mid-1999, it is reasonable to assume that petitioners' account was written off as a practical matter at that time. Taking into account all the facts and circumstances, the fact that Discover may not have removed petitioners' debt from their books until 2001 because of a faint possibility of collecting the debt does not establish that the discharge occurred in 2001. See Exch. Sec. Bank v. United States, 492 F.2d 1096, 1099 (5th Cir. 1974) (settlement agreement fixed the time when cancellation of debt occurred, not when the debt was removed from the company's books); Bear Manufacturing Co. v. United States, 430 F.2d 152, 154 (7th Cir. 1970) (as a practical matter, income is realized when the liability terminates); Fidelity-Philadelphia Trust Co. v. Commissioner, 23 T.C. 527, 530 (1954) ("The important

consideration is that it was unlikely as a matter of fact that the bank would have to honor its obligation to the depositors."); Rivera v. Commissioner, T.C. Memo. 1993-609 (a settlement agreement, a court order, and payment pursuant to the settlement agreement together reasonably established an abandonment of debt, not when payments recorded); Estate of Marcus v. Commissioner, T.C. Memo. 1975-9 (decedent's estate realized income in the year of decedent's death because the executors did not intend to satisfy certain debts and the creditor did not intend to enforce such claims).  A deemed discharge of indebtedness occurred in 1999 when Discover ceased collection activities against petitioners.  Accordingly, we conclude that petitioners did not receive discharge of indebtedness income from account 790 of $8,637 in 2001.

### 3.  Account 879

Mr. De Shon denies ownership of account 879.  In contrast, respondent contends that petitioners received discharge of indebtedness income as reported on the Form 1099-C.  We agree with respondent.

Petitioners in fact received the Form 1099-C from Discover, which was addressed to their current mailing address.  Upon receiving the Form 1099-C, we find it noteworthy that petitioners did not contact Discover concerning this account, especially in light of their contention that they did not maintain this

account.  Moreover, the mailing address on the August 2000 monthly statement was the same as petitioners' current mailing address.

On the one hand, Mr. De Shon testified at trial that he had no knowledge of this account, but, on the other hand, he testified that he had no knowledge of a lot of paperwork in Mrs. De Shon's possession.  Mr. De Shon's conflicting testimony leads to an inference that petitioners, either jointly or separately, in fact maintained account 879.

On the basis of the record, we conclude that petitioners received discharge of indebtedness income from account 879 of $3,617 in 2001.  Accordingly, we sustain respondent's determination on this issue.

B.    Section 6662(a) Penalty

In the notice of deficiency, respondent determined that petitioners are liable under section 6662(a) for an underpayment of tax that is attributable to substantial understatement of income tax.

Section 6662(a) imposes a penalty equal to 20 percent of any underpayment of tax that is attributable to substantial understatement of income tax.  See sec. 6662(a) and (b)(2).  An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000.  Sec. 6662(d)(1)(A).  An "understatement" is

defined as the excess of the tax required to be shown on the return over the tax actually shown on the return. Sec. 6662(d)(2)(A). Tax is not understated to the extent that the treatment of the item related thereto is based on substantial authority or is adequately disclosed in the return or in a statement attached to the return, and there is a reasonable basis for the tax treatment of such item by the taxpayer. Secs. 6662(d)(2)(B), 6664(c)(1).

By virtue of section 7491(c), respondent has the burden of production with respect to a section 6662 accuracy-related penalty. To meet this burden, respondent must produce sufficient evidence indicating that it is appropriate to impose the relevant penalty. Higbee v. Commissioner, 116 T.C. at 446. Once respondent meets this burden of production, the taxpayer, however, continues to have the burden of proof with regard to whether respondent's determination of the penalty is correct. Rule 142(a); Higbee v. Commissioner, supra. The taxpayer also bears the burden of proving that he or she acted with reasonable cause and in good faith. See sec. 6664(c)(1); see also Higbee v. Commissioner, supra; sec. 1.6664-4(b)(1), Income Tax Regs.

In light of our conclusions above, as well as respondent's concession, respondent did not satisfy his burden of production under section 7491(a)(1) because the record demonstrates that the understatement of income tax was not substantial within the

meaning of section 6662(d)(1)(A)(ii).  Accordingly, we hold that petitioners are not liable for the section 6662(a) accuracy-related penalty.

## Conclusion

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues, as well the parties' concessions,

Decision will be entered
under Rule 155.