T.C. Summary Opinion 2005-147

UNITED STATES TAX COURT

DAVID O. ALEGRIA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8620-04S.                    Filed October 11, 2005.

David O. Alegria, pro se.

Douglas S. Polsky, for respondent.

ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2001, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 2001 of $9,427 and an accuracy-related penalty under section 6662(a) of $1,885.

The issues for decision are:

(1) Whether petitioner received unreported discharge of indebtedness income of $31,327 in taxable year 2001. We hold that he did.

(2) Whether petitioner is liable under section 6662(a) for an accuracy-related penalty. We hold that he is not.

Adjustments to the amount of petitioner's itemized deductions, child tax credit, and alternative minimum tax are purely computational matters, the resolution of which is dependent on our disposition of the first disputed issue.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioner resided in Topeka, Kansas.

In 1984, petitioner obtained a credit card from MBNA America Bank (MBNA), which he used on occasion over the next 15 years.

In 1998, petitioner sold his home in Topeka, Kansas. In May 1999, petitioner purchased a new home. Between the time that petitioner sold his former home and moved into his new home, he received mail at a post office box address.

In the fall of 1999, petitioner received a statement from MBNA reflecting an outstanding balance of approximately $36,000. Petitioner contacted MBNA, stating that approximately $30,000 of the charges were not made by him. MBNA informed petitioner that such amount was traceable to a convenience check.[2] Petitioner offered to pay MBNA $6,000. For about 6 months thereafter, petitioner made monthly payments to MBNA of $200-300. Sometime in 1999, petitioner's MBNA card was canceled.[3]

In 2000, NCO Financial Systems, Inc. (NCO), contacted petitioner on behalf of MBNA to collect the outstanding balance on petitioner's MBNA card of approximately $36,000. NCO's "Fact Sheet" indicated that the "status" of petitioner's account was "settlement" and that the "collection unit" was "purchase dispute". Petitioner informed NCO that the charges were not his, that he had a lot of debt that he could not pay, and that he was willing to pay only $6,000.

---

[2] Petitioner admits that he has used convenience checks against his MBNA card in the past.

[3] The record does not disclose whether petitioner or MBNA canceled the card.

On October 17, 2001, NCO sent petitioner a collection letter indicating that the amount owed was $39,627, but that the amount due on October 31, 2001, was $6,000. The letter further indicated that "Your regularly scheduled payment * * * is now due according to the terms you arranged with our office." On October 31, 2001, petitioner paid NCO $6,000 with respect to his MBNA account.

For 2001, NCO sent to petitioner a Form 1099-C, Cancellation of Debt, reporting debt canceled on October 31, 2001, of $31,327.

On his Federal income tax return for 2001, petitioner did not report the amount reported on the Form 1099-C.

Respondent determined that petitioner failed to report on his tax return for 2001 income from the cancellation of indebtedness of $31,327. Respondent further determined that petitioner is liable for the accuracy-related penalty for substantial understatement of income tax.

## Discussion

### A.  Discharge of Indebtedness

Gross income includes all income from whatever source derived, including but not limited to discharge of indebtedness. Sec. 61(a)(12); sec. 1.61-12(a), Income Tax Regs. A discharge of indebtedness generally produces income in an amount equal to the difference between the amount due on the obligation and the

amount paid for the discharge. See Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), affg. T.C. Memo. 1992-673.

As explained by the Supreme Court of the United States, the general theory is that to the extent that a taxpayer has been released from indebtedness, the taxpayer has realized an accession to income because the cancellation of indebtedness effects a freeing of assets previously offset by the liability arising from such indebtedness. United States v. Kirby Lumber Co., 284 U.S. 1, 3 (1931); see Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). If, however, the cancellation of all or part of a debt is made in settlement of a dispute concerning the debt, no income from cancellation of indebtedness arises. N. Sobel, Inc. v. Commissioner, 40 B.T.A. 1263, 1265 (1939); Exch. Sec. Bank v. United States, 345 F. Supp. 486, 490-491 (N.D. Ala. 1972), revd. on other grounds 492 F.2d 1096 (5th Cir. 1974); see Colonial Sav. Association v. Commissioner, 85 T.C. 855, 862-863 (1985), affd. 854 F.2d 1001 (7th Cir. 1988). Settlement in such circumstances does not occasion a freeing of assets and accession to income. N. Sobel, Inc. v. Commissioner, supra at 1265.

As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This rule, however, is subject to the provisions of section 7491(a), under which the

burden of proof may, under certain circumstances, be shifted to the Commissioner if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's income tax liability.  The legislative history of section 7491 defines "credible evidence" as "the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness)."  H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995; see Higbee v. Commissioner, 116 T.C. 438, 442 (2001).  On the basis of the record, we hold that section 7491(a) does not operate to place the burden of proof on respondent; in short, petitioner did not introduce testimonial (or other) evidence sufficient to place in doubt the documentary evidence in the record.[4]

Petitioner claims that he disputed his debt with MBNA in the fall of 1999, alleging that someone not authorized by him made charges to his account, which MBNA informed him were attributable to a convenience check.  As a result, petitioner contends that he offered to pay $6,000 of charges that he admittedly made, which

---

[4]  Sec. 6201(d) also does not apply in this case to place on respondent the burden of producing evidence to supplement the information return filed by NCO Financial Services, Inc.  In this regard, the record does not demonstrate that all of the requirements of sec. 6201(d) were satisfied, including the requirement that "the taxpayer has fully cooperated with the Secretary".

he claims that MBNA agreed to accept in settlement of the dispute. Petitioner further claims that when NCO contacted him with respect to the same debt, he informed NCO that MBNA agreed to accept $6,000 in settlement of the dispute, at which time petitioner made full payment of the $6,000 to NCO. Therefore, in petitioner's view, he did not realize income from the cancellation of the $30,000 that NCO claimed was owed by petitioner.

On the basis of the evidence in the record, however, we are not persuaded that petitioner did not receive income from the cancellation of indebtedness. We do not doubt that petitioner communicated with MBNA about his account or that petitioner paid NCO $6,000 with respect to his MBNA account. Petitioner, however, did not present any documentary evidence, such as correspondence to or from MBNA, notes of his discussions with MBNA, or a copy of the alleged fraudulent convenience check, demonstrating that NCO accepted his $6,000 payment as a settlement of his dispute with MBNA in the amount of $30,000. Indeed, NCO's "Fact Sheet" indicates that there was a "purchase dispute" with respect to petitioner's MBNA account, but there is nothing in the record to explain the nature or the amount of the "purchase dispute". Rather, the entirety of the record indicates that NCO canceled petitioner's debt in the amount of $30,000 because of petitioner's inability to readily pay the outstanding

balance.[5]  Accordingly, respondent's determination is sustained

on this issue.  Rule 142(a); <u>Welch v. Helvering</u>, <u>supra</u>.

B.    <u>Section 6662(a) Penalty</u>

In the notice of deficiency, respondent determined that

petitioner is liable under section 6662(a) for an underpayment of

tax that is attributable to substantial understatement of income

tax.

Section 6662(a) imposes a penalty equal to 20 percent of any

underpayment of tax that is attributable to substantial

understatement of income tax.  See sec. 6662(a) and (b)(2).  An

understatement of income tax is "substantial" if it exceeds the

greater of 10 percent of the tax required to be shown on the

return, or $5,000.  Sec. 6662(d)(1)(A).  An "understatement" is

defined as the excess of the tax required to be shown on the

return over the tax actually shown on the return.  Sec.

6662(d)(2)(A).  Tax is not understated to the extent that the

treatment of the item related thereto is based on substantial

authority or is adequately disclosed in the return or in a

statement attached to the return, and there is a reasonable basis

for the tax treatment of such item by the taxpayer.  Secs.

6662(d)(2)(B), 6664(c)(1).

---

[5]  There is evidence in the record, including petitioner's own testimony, to suggest that petitioner was not able to pay his credit card debt without financial hardship.

By virtue of section 7491(c), respondent has the burden of production with respect to the accuracy-related penalty. To meet this burden, respondent must produce sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. at 446. Once respondent meets this burden of production, the taxpayer has the burden of proof with regard to whether respondent's determination of the penalty is correct. Rule 142(a); Higbee v. Commissioner, supra. As a defense to the penalty, the taxpayer bears the burden of proving that he or she acted with reasonable cause and in good faith. See sec. 6664(c)(1); see also Higbee v. Commissioner, supra; sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent satisfied his burden of production under section 7491(a)(1) because the record shows that petitioner substantially understated his income tax for 2001. See sec. 6662(d)(1)(A)(ii); Higbee v. Commissioner, supra at 442. Accordingly, petitioner bears the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the understatement for which he acted with reasonable cause and in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, supra at 446.

Although the issue may not be free from doubt, we are satisfied, based on the totality of the facts and circumstances in the instant case, that petitioner had reasonable cause to

believe that he did not realize income from his canceled debt and that he acted in good faith.  Accordingly, we hold that petitioner is not liable for the accuracy-related penalty.

<u>Conclusion</u>

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues,

<u>Decision will be entered</u>

<u>for respondent as to the</u>

<u>deficiency in tax and for</u>

<u>petitioner as to the penalty</u>.